The question is whether, since the decision of this court that national banks in this State were subject to the usury laws of the State, and that the provisions of the national bank act, limiting forfeitures for taking usury, applied only to banks located in States and territories where no usury law existed, the act of the legislature, chapter 163, Laws of 1870, is operative to limit the forfeiture for taking usury by the State banks organized under the general banking law of this State to the interest only. It is claimed that this act in effect has repealed the usury laws of the State as to State banks, and conferred upon them the exclusive privilege of taking usury at the risk only of a forfeiture of interest, which, as a preventive, is of no practical benefit. It is quite true that the legislature possesses this power, and if a fair and reasonable construction of the act leads to this result, we have no alternative but to so adjudge, but if the provisions of the act are capable of a different construction consistently with legal principles, all will agree that such construction should be adopted. The circumstances are somewhat peculiar, but applying the analogies of the law and established principles, we must determine the true meaning of the act. It may be conceded that the first section of the act standing alone would supersede the usury laws and operate as a repeal by implication, so far as applicable to banking associations. But the claim that this section is in force underrates the effect of, and misconstrues the second section of the act, which is: "It is hereby declared that the true intent and meaning of this act is to place the banking associations organized and doing business as aforesaid, on an equality in the particulars *Page 57 
in this act referred to with the national banks organized," under the act of Congress.
The cardinal rule for the construction of legislative acts is to ascertain the intent of the legislature. When that is determined, the language must yield to that intent. We are not left to conjecture as to the intent in this case. It is expressly declared and is a part of the law itself, and to carry out that intent, all other parts of the act must yield. The declared intent is, that notwithstanding the language of the first section, this act shall only have the effect of giving the State banks the same rights and privileges, and making them subject to the same forfeitures in respect to taking usury as the national banks have under the act of Congress. If this had been the language, no question could have been made. The rights and liabilities of national banks under the federal act would have been the measure of the rights of State banks. The language employed in the second section, while it might have been more expressive, has the same meaning. It declares the intent andmeaning to be to place State banks on an equality with national banks, under the national act. Equality means the same rights and privileges and the same forfeitures, and it means nothing else. If this expressed meaning is to prevail, the State banks can have no other or different rights, nor be subject to any other or different forfeitures, than national banks. It follows that if national banks were, notwithstanding the national act, subject to the usury laws of the State, the State banks were also, or else the declared meaning of equality is nugatory. It is said that this renders the statute inoperative, and that this result must be avoided. This is a plausible but not a valid or sound position. There is nothing in the Constitution nor in any legal principle to prevent the legislature from passing an act with provisions which render it inoperative. When different constructions may be put upon an act, one of which will accomplish the purpose of the legislature and the other render the act nugatory, the former should be adopted; but when the provisions of an act are such that to make it operative would violate the *Page 58 
declared meaning of the legislature, courts should be astute in construing it inoperative. We may consider the circumstances existing at the time. We may take notice of the fact that the national banks of this State acted upon a construction of the act of Congress which applied its provisions to them, and it is not too much to assert that such was the general understanding, and it does no harm to admit that such was the understanding of the legislature. These facts doubtless induced the passage of the act, but the language employed shows that the legislature intended to guard against a mistaken construction. If the act had declared that the act of Congress, having limited forfeitures for usury taken by national banks to the interest only, and that it was therefore enacted that forfeiture for usury taken by State banks should be also limited to interest only, this would have been an enactment by the legislature of the provisions of the federal act, as construed by it; and although the construction would have been a mistaken one, the act would have been valid and operative. This was not the form adopted.
The legislature, instead of enacting their construction of the national act, qualified it by merely placing the State banks upon an equality with the national banks, and, in doing so, they expressly negatived the intent to give the State banks superior privileges in respect to forfeitures for taking usury. As the federal act has been adjudged not to apply to national banks located in this State, the court, in holding the act of 1870 inoperative, are but carrying out the express provisions of the act itself, and the declared intention of the legislature, and, although the circumstances are exceptional, yet it is in conformity to established rules.
The suggestion of the learned judge, in the opinion at General Term, that inasmuch as the act does not specify equality with the national banks of the State, it would be justifiable, in order to make the act operative, to infer that the legislature intended to declare the equality of State banks with national banks in the States and territories where usury laws do not exist, illustrates the dangerous and *Page 59 
erroneous character of the position that any possible construction should be adopted to make the act operative in a case where it is evident that to do so would violate the intent of the legislature. Such a construction would convict the legislature of an intent to give State banks a monopoly in taking usury, and of doing it by a device unworthy of a legislative body. To avoid such a conclusion (which would be unjust in fact) we should adopt any construction justified by the language.
It is also said that the second section should be regarded as a saving clause or a proviso, and that, if repugnant to the purview of the act, it is void. There is a distinction between the effect of a repugnant saving clause and a repugnant proviso. Whether any sound reason exists for the distinction or not, it seems to be recognized as a settled rule. A saving clause is only an exception of a special thing out of the general things mentioned in the statute, and if repugnant to the purview is void. (Potter's Dwarris, 117.) The office of a proviso is more extensive. It is used to qualify or restrain the general provisions of an act, or to exclude any possible ground of interpretation as extending to cases not intended by the legislature to be brought within its purview. (Id., 118, note and cases cited; 1 Kent Com., 463, note a.) And if repugnant to the purview it is not void, but stands as the last expression of the legislature. (Id.; 23 Maine, 360.) If, therefore, technical rules are applied, and the second section is regarded as a proviso, it must stand and control the previous provisions. If a proviso had been inserted in form, at the end of the first section, declaring in terms that the act should not be operative beyond placing State banks upon an equality with national banks under the federal act, it would have been a valid restraint upon the other provisions, according to the strictest rules of construction. This is the fair import of the second section. It declares the meaning of the act to be equality, and equality can only be attained by declaring the act inoperative, in consequence of the adjudged inapplicability of the provisions of the act of *Page 60 
Congress, limiting forfeitures to national banks located in this State. The second section is quite as effective as if in form a proviso. In fact, it is an independent portion of the statute, and must have its legitimate force and effect. To avoid these views, it is said that the second section was intended only to declare the reason for passing the first section. This is as untenable as the other grounds taken in favor of the extraordinary construction claimed. The language certainly does not justify it. Instead of employing words expressive simply of a reason for passing the first section, which might be appropriate in a preamble, reciting the occasion for the act, it declares, in effect, that the act shall be construed to mean and produce equality, and this is as binding as any other part, indeed it controls, restrains and qualifies the other parts. It is a binding operative provision, and in no just way can it be diluted into a mere reason for passing the first section.
It is also urged that the act may have beguiled the banks into the practice of taking usury, and that therefore it would be unjust to hold it inoperative. This argument is entitled to no weight. Up to the time of the decision of The First NationalBank of Whitehall v. Lamb,* the State banks and national banks were upon an equality in this respect. They both doubtless supposed that usury might be exacted with impunity. After that decision there could be no delusion on the subject, nor was there any. Every layman would understand the meaning of the act by its plain language, and every banker knows the difference between equality and monopoly, and that, if the national banks were still subject to the usury laws, the State banks were, also, and it is believed that this view was generally adopted; but if not, those who have violated the law must suffer the consequences. In substance, we are asked to declare inequality between national and State banks in respect to taking usury, in the face of the legislative mandate declaring equality, and this we have no right to do. It is certain that the legislature did not contemplate such a *Page 61 
result, and I am confident that neither the language of the act, nor any principle of law, will justify it.
I am in favor of a reversal of the judgment.
* 50 N.Y., 95.