hands of a third person, and she being compelled to pay the whole amount thereof, such difference constituted a claim or credit in favor of the defendant against the plaintiff,—something which could be applied in partial reduction, extinguishment, or payment of the note. And it was so applied by consent of parties. The indorsement was not made by the plaintiff, but by a third party, with the consent, or, it may rather be said, by the instruction, of the defendant. And it was done under such circumstances as to show an acknowledgment of the balance of the note, and an intention to pay it. Her claim that she would be deprived of the benefit of the interest upon it, if it was indorsed as of that date, emphasizes her acknowledgment of the balance of the note, and of her intention to pay. The whole transaction brings it clearly within the reason of the decisions I have cited, for allowing payment to prevent the operation of the statute; and within the meaning of the statute, and the principle of the cases hereinbefore referred to, I think it must be held to be a payment upon the note, made when the indorsement was in fact placed on the note. The evidence by which the facts I have recited were established was not objected to. The facts were undisputed. The statute of limitations had, by reason of the circumstances I have detailed, no application to the case, and there was nothing for the jury to pass upon, and the court should have directed a verdict. Miller v. Talcott, 54 N. Y. 114–119. If the court had held the transaction of December 15, 1890, a payment, as herein indicated, the question as to the indorsement of $50, January 30, 1886, and of $20, December 30, 1886, would have been of no consequence; the bar of the statute being removed by the transaction of December 15, 1890.

The judgment should be reversed, and a new trial granted; costs to abide the event.

PARKER, P. J., and MERWIN and LANDON, JJ., concur. PUTNAM, J., concurs in result.

---

FLOUR CITY NAT. BANK OF ROCHESTER v. MILLER.

(Supreme Court, Appellate Division, Fourth Department. April, 1896.)

USURY—QUESTION FOR THE JURY.

    C., whose business was lending money and indorsing paper, had an arrangement with plaintiff bank by which it was to discount all notes bearing her indorsement, for the benefit of the maker; the proceeds to be drawn by "discount checks" signed by the maker; plaintiff being furnished by C. with collateral security to indemnify it. Defendant made application to C. for a loan of $50 for three months, and C. offered, as testified by defendant, to make the loan, or, as testified by C., to lend C.'s credit, for $10. A note for $60, signed by defendant, payable to and indorsed by C., was discounted by plaintiff, and the proceeds, less the legal discount, placed to defendant's credit, and immediately withdrawn on his discount check; he thereupon paying $10 to C.'s agent. *Held*, that whether the transaction was a cover for usury, to plaintiff's knowledge, was a question for the jury.

Appeal from Monroe county court.

Action by the Flour City National Bank of Rochester against

George Miller. From a judgment of the county court reversing a judgment of the municipal court of Rochester for plaintiff, plaintiff appeals. Affirmed.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

Hiram R. Wood, for appellant.

Frederick A. Mann, for respondent.

ADAMS, J. This is an action brought to recover the amount of two promissory notes, which had their inception under the following circumstances, viz.: Upon the 19th day of August, 1893, the defendant applied to one David J. Cushman (who, it appears, is the nominal agent of his wife, S. J. Cushman) for the loan of $50, and asked what he would charge for the use of that sum for three months; and, as the defendant testifies, the answer was, "Ten dollars." The defendant demurred somewhat to this charge, as excessive, but his necessities seem to have been such that he was forced to yield to the demand of the agent; and a note was thereupon drawn up, and signed by the defendant, for the sum of $60. This note was made payable to the order of S. J. Cushman, on or before November 20th, at the Union Bank, and was subsequently indorsed by the payee. There was a sharp conflict between the evidence of the defendant and that of D. J. Cushman as to what occurred at the time the note was executed; the former insisting that he was applying for, and that he actually received, a loan of money, while Cushman testified, with equal insistence, that he declined to make a loan, but offered to sell his wife's credit, for a specified consideration. Without dwelling upon this feature of the case, which is almost invariably present in transactions of this character, it is perhaps sufficient to say that, whatever may have been the actual relation of Cushman or his wife to the transaction, the former seems to have been careful to obtain from the defendant the customary affidavit and chattel mortgage, containing recitals which, upon their face, appear to corroborate his version of the agreement between the parties. It also appears that this note was executed on Saturday afternoon, at which time the bank at which it was made payable was closed; and, the defendant being in immediate need of money, Cushman advanced him the sum of $25, which he says was in the nature of a temporary loan, and for which he very considerately charged nothing in addition to the $10. Upon the following Monday the defendant went with Cushman to the Union Bank, where the note was discounted. The avails, less the legal discount, were placed to the defendant's credit, and immediately withdrawn, upon his discount check; and thereupon Cushman retained the $25 advanced, and his charge of $10 for his wife's indorsement, and handed over the balance to the defendant, who actually received the sum of $49.60, as the net avails of his note of $60. When this note matured the defendant was unable to meet it, and it was renewed, with Mrs. Cushman's indorsement upon the renewal, and this occurred several times, until finally the note first mentioned in the complaint herein was given, the defendant paying

$10 in addition to the legal rate of interest upon each renewal; the only variation being that from time to time the note was increased in amount, so as to cover the expenses of the renewal. The second note in suit is likewise one of a series of renewals of a note the same in amount as the first one, and given under precisely the same circumstances, save that it was made payable at the plaintiff bank, and nothing was paid the defendant thereon until it was taken to the bank.

The defense to these notes is that they are void for usury, and the only question in the case is whether the evidence is such that a jury might be permitted to infer therefrom either that the notes had their inception prior to the time they came into the plaintiff's possession, or that the transaction which resulted in their execution was a mere cover for usury, to enable the indorser to obtain more than the legal rate of interest. It is undoubtedly well settled that the payment of a sum of money in excess of the legal rate of interest, to an accommodation indorser, as a compensation for the loan of his credit, does not taint the note with usury, in the hands of one to whom the maker subsequently negotiated it for value, inasmuch as it cannot be said that such a note ever had any legal inception in the hands of the accommodation indorser. Van Duzer v. Howe, 21 N. Y. 531; Bank v. Betts, 37 N. Y. 356; Bank v. Cameron, 79 Hun, 63, 29 N. Y. Supp. 505. And, if the evidence in this case were capable of no other construction than the one contended for by the plaintiff, the trial court would have been fully justified in withholding it from the consideration of the jury. But we are inclined to think that the entire evidence, when taken in connection with what is contained in the complaint, is of such a character as to permit different inferences to be drawn therefrom, and consequently that a question of fact was presented, which the defendant was entitled to have submitted to the jury. The facts appearing in the record in this case reveal a carefully devised scheme, by means of which the most flagrant extortion might be practiced upon a borrower in straitened circumstances, without rendering the lender amenable to the consequences which the law denounces against usury; and nowhere during the entire transaction is more adroitness evinced than in the substitution of a new note in place of the original one, and having the same discounted by the plaintiff, instead of the Union Bank, in order that it might not be subject to the contention that the loan of the $25 by the payee was some evidence of an inception of the original obligation. It would not, of course, be for a moment contended that these notes would possess any validity if, as a matter of fact, the originals had inception prior to their coming into the plaintiff's possession, and the effort upon the part of the defendant has been to point to something in the record which might properly be regarded as evidence of this fact. In this connection it may be observed that considerable stress is laid upon the allegation of the complaint that the notes were first "delivered" to the payee, and it is claimed that this expression is equivalent to an admission of inception; but, whatever foundation may exist for this conten-

tion, we are disposed to rest our decision upon a different ground. It appears from the evidence of the plaintiff's cashier, as well as from that of its witness Cushman, that these notes were not discounted in the usual course of business, but that an arrangement existed between the bank and Mrs. Cushman by which the former was to discount all notes bearing her indorsement, for the benefit of the maker, and that the proceeds of the notes thus discounted were to be drawn by what are termed "discount checks," signed by the maker. It also appears that Mrs. Cushman's business was that of lending money and indorsing paper, and that she had furnished the plaintiff with collateral security to indemnify it for discounting paper bearing her indorsement, all of which might fairly warrant the inference that the bank was not only cognizant of the precise nature of her business, but that it derived some profit therefrom; and such inference might also be somewhat strengthened by the fact that Mrs. Cushman's indorsement apparently possessed no inherent credit at the bank, inasmuch as additional security was required. In the case of Bank v. Cameron, supra, the evidence was to the effect that the note in suit was discounted by the bank in good faith, and without any knowledge of any arrangement in reference thereto between the maker and the indorser. That very essential element is absent from the case under consideration. Not only is this so, but, as has been shown, the jury would have been warranted in concluding that the plaintiff knew, or had the means of knowing, the circumstances attending the giving of these notes, and that with this knowledge it assumed whatever risk attended their discount, relying upon the collateral security which it held for its indemnity. Briefly epitomizing, therefore, the case which is here presented, we are of the opinion that it should have been left to the jury to say whether or not the transaction attending the giving of these notes was a mere cover for usury, of which the plaintiff either had actual knowledge, or ample means of informing itself, before discounting the same; and, this being the case, the judgment of the county court should be affirmed.

Judgment affirmed, with costs.    All concur.