(49 Misc. Rep. 419.)

### SCHLESINGER v. LEHMEIER.

(City Court of New York, Trial Term. February, 1906.)

BANKS AND BANKING—USURY—ACTION ON NOTE—WHEN A DEFENSE.

Where the receiver of a state bank sues to recover on a note discounted by it in due course, defense of usury is not available, under Laws 1892, p. 1869, c. 689, § 55.

Action by Leo Schlesinger, receiver of the Federal Bank of New York, against Ludwig Lehmeier. Judgment for plaintiff. Reversed in 99 N. Y. Supp. 389.

Kneeland, La Fetra & Glaze (George W. Glaze, of counsel),. for plaintiff.

Otto C. Sommerick (Maxwell C. Katz, of counsel), for defendant.

GREEN, J.  This action is brought by one Leo Schlesinger, as receiver of the Federal Bank of New York, against the defendant, who is the maker of two promissory notes, to recover upon the said two promissory notes, discounted by the Federal Bank, allegedly, in due course.  The answer contains denials of the allegations of discount in due course; two defenses of usury to both causes of action; a defense that the notes were executed and delivered to the Globe Security Company without consideration, and that when the Federal Bank discounted said notes it had knowledge of that fact; and a final defense that the two notes were delivered to the Globe Security Company upon the express condition and agreement with the Globe Security Company that it would not negotiate the same, or deliver the same to any other person, and that, if so delivered or negotiated, the said notes should be void.  The case on the law and facts was submitted to the court without a jury.  The plaintiff presented his prima facie case and rested, and thereupon moved to dismiss the separate affirmative defenses contained in the answer and for judgment, and this motion is now before the court.

Counsel for plaintiff urges in support of the motion that, as against a state or national bank, the defense of usury may not be interposed, whether it be an innocent holder for value or not; and this important question necessitates an examination of the statutes in reference to the taking of usury, and likewise of the statutes applicable to and affecting state and national banks on the question under consideration.

Section 1, tit. 3, c. 4, pt. 2, of the Revised Statutes, provides as follows:

"Section. 1. The rate of interest upon the loan or forbearance of any money, goods or things in action shall be six dollars upon one hundred dollars, for one year, and after that rate, for a greater or less sum, or for a longer or shorter time. * * * [as amended in 1879, p. 598, c. 538.]

"Sec. 2. No person or corporation shall, . directly or indirectly, take or receive in money, goods or things in action, or in any other way, any greater sum or greater value, for the loan or forbearance of any money, goods or things in action, than is above prescribed."

"Sec. 5. All bonds, bills, notes, assurances, conveyances, all other contracts or securities whatsoever (except bottomry and respondentia bonds and contracts), and all deposits of goods or other things whatsoever, whereupon or whereby there shall be reserved or taken, or secured or agreed to be reserved or taken any greater sum or greater value, for the loan or forbearance of any money, goods or other things in action than is above prescribed shall be void; but this act shall not affect such paper as has been made and transferred previous to the time it shall take effect." Laws 1837, p. 486, c. 430.

By an examination of these statutes it is clearly seen that the taking of usury makes the note given therefor void, and it is beyond question the settled law of this state that a loan made upon notes or bills, and for which a usurious rate of interest is charged in violation of the statute, is void in its inception, and that the vice of usury follows the note even into the hands of a bona fide holder.

As was said by the Court of Appeals:

"No vitality can be given to it by sale or exchange, because that which the statute has declared void cannot be made valid by passing through the channels of trade." Claflin v. Boorum, 122 N. Y. 385, 388, 25 N. E. 360, 361; Union Bank of Rochester v. Gilbert, 83 Hun, 417, 31 N. Y. Supp. 945; Freeport Bank v. Hagemeyer, 91 Hun, 194, 36 N. Y. Supp. 214; Flour City Nat. Bank v. Miller, 4 App. Div. 585, 38 N. Y. Supp. 503; Chatham Bank v. Betts, 37 N. Y. 356; Union Bank of Rochester v. Benedict, 35 App. Div. 216, 54 N. Y. Supp. 721.

Were this the only statute upon the subject, the question as to the availability of the defense of usury against a state bank would be beyond dispute; but it must be borne in mind that state banks are the creatures of state laws, national banks of national laws, and that, so far as state banks are allowed to do and transact the business for which they are permitted to exist, they are controlled by the law of the state of their creation, while as to the national banks, which are governed by federal Statutes, the state can exercise no control over them, except so far as Congress may see proper to permit. Farmers' & Mechanics' Bank v. Dearing, 91 U. S. 29, 23 L. Ed. 196. It is conceded that the Federal Bank, the plaintiff in this action, suing through its receiver, is a domestic corporation. organized under the laws of the state of New York, and it is consequently governed by the banking law of this state (chapter 689, p. 1842, Laws 1892, as amended); and, this being a general law, applicable to a particular subject of legislation, and for the regulation, control, and conduct of which the law was enacted, it is necessary to examine the statute, to ascertain whether any special provision is made on the subject of usury or unlawful interest, and, if so, whether, from the language of the act, the general statute, hereinbefore referred to as the "usury statute," is, actually or by im-

plication, either repealed or its effect nullified in so far as it affects state or national banks. The subject of usury is provided for in section 55 (page 1869) of that act, which reads as follows:

"Section 55. Rate of interest.—Every bank and private and individual banker doing business in this state may take, receive, reserve and charge on every loan or discount made, or upon any note, bill of exchange or other evidence of debt, interest at the rate of six per centum per annum; and such interest may be taken in advance, reckoning the days for which the note, bill or evidence of debt has to run. The knowingly taking, receiving, reserving or charging a greater rate of interest shall be held and adjudged a forfeiture of the entire interest which the note, bill or other evidence of debt carries with it, or which has been agreed to be paid thereon. If a greater rate of interest has been paid, the person paying the same or his legal representatives may recover back twice the amount of the interest thus paid from the bank and private or individual banker taking or receiving the same, if such action is brought within two years from the time the excess of interest is taken. The purchase, discount or sale of a bona fide bill of exchange, note or other evidence of debt payable at another place than the place of such purchase, discount or sale at not more than the current rate of exchange for sight drafts, or a reasonable charge for the collection of the same, in addition to the interest, shall not be considered as taking or receiving a greater rate of interest than six per centum per annum. The true intent and meaning of this section is to place and continue banks and private and individual bankers on an equality in the particulars herein referred to with the national banks organized under the act of Congress, entitled 'An act to provide a national currency secured by pledge of United States bonds, and to provide for the circulation and redemption thereof,' approved June the third, eighteen hundred and sixty-four."

It is readily seen by reading the foregoing provision of the banking law that it provides an entirely different rule or law in regard to the taking of usurious interest than that provided for individuals, in that, as between individuals, the note or bill would be void, and so from its inception, under the statute of usury; but as to banks, that the maximum penalty, if it may be so called, would be the forfeiture of the entire interest on the note, or, if the greater has been paid, that an action, if brought within two years, may be maintained and brought for twice the amount of the excess of interest so paid. The last clause of the section, as above set forth, is declaratory of the true intent and meaning of the section, and declares the intent to be "to place and continue banks and private and individual bankers on an equality in the particulars herein referred to with the national banks organized under the act of Congress." This leads us to an examination of the federal statute applicable to national banks and the decisions of the federal courts upon the subject at bar, in order that the intention of the Legislature may be thoroughly understood, and proper force given to its express declaration of "intent and meaning." The provisions of the federal Statutes are somewhat similar to that of the New York statute, and, so far as applicable, are as follows:

"Section 5197, Rev. St. (U. S. Comp. St. 1901, p. 3493). Every association may take, receive, reserve and charge on any loan or discount made, or upon any note, bill of exchange, or other evidences of debt, interest at the rate allowed by the laws of the state, territory or district where the bank is located, and no more, except that where by the laws of any state a different rate is limited for banks of issue, organized under state laws, the rate so limited shall be allowed for associations organized or existing in any such state under this title. When no rate is fixed by the laws of the state, or territory, or district, the bank may take, receive, reserve or charge a rate not exceeding seven

per centum, and such interest may be taken in advance, reckoning the days
for which the note, bill or other evidence of debt has to run. And the pur-
chase, discount or sale of a bona fide bill of exchange, payable at another place
than the place of such purchase, discount or sale, at not more than the cur-
rent rate of exchange or sight drafts in addition to the interest, shall not be
considered as taking or receiving a greater rate of interest. * * * The
taking, receiving, reserving or charging a rate of interest greater than is al-
lowed by the preceding section, when knowingly done, shall be deemed a for-
feiture of the entire interest which the note, bill or other evidence of debt car-
ries with it, or which has been agreed to be paid thereon. In case a greater
rate of interest has been paid, the person by whom it has been paid, or his
legal representatives, may recover back, in an action in the nature of an ac-
tion of debt, twice the amount of the interest thus paid from the association
taking or receiving the same; provided such action is commenced within two
years from the time the usurious transaction occurred."

The intention, as expressed by the Legislature in the very law itself,
is to place the state banks on an equality with the national banks. The
question then arises as to what, and the answer finds expression in the
language of the act, "on an equality in the particulars herein referred
to," and those particulars refer to the taking of interest on notes or
bills, etc., and the forfeiture of the entire interest, if an excess of 6 per
cent. is taken or received, and permitting an action for twice the amount
of the excess interest paid if brought within two years from the time it
was taken. The Legislature of the state, by the act in question, ex-
pressly intended that there should be no difference between the rights
of state or national banks in the particulars mentioned in the act, and
which related to the taking of interest. The use by the Legislature of
the language that "the true intent and meaning of this section is to place
and continue banks and private and individual bankers on an equality
in the particulars herein referred to with the national banks," meant
on an equality before the law as it was then known, adjudicated, and
understood at the time of the passage of the act by the state of New
York, and which had reference to the taking of interest; to the end
that, upon that subject, there should be no difference as to defenses of
usury against state banks and which was not permitted against those
under federal control. In the case of First Nat. Bank of Whitehall v.
Lamb, 50 N. Y. 95, 10 Am. Rep. 438, the Court of Appeals decided that
the provision of the federal act (Rev. St. §§ 5197, 5198 [ U. S. Comp.
St. 1901, p. 3493]), so far as it related to usury in connection with
national banks, was of force only in states and territories where there
were no usury laws, and that no immunity from state usury laws ob-
tained. In the case of Farmers' Bank v. Hale, 59 N. Y. 53, under a
statute similar to section .55 of the banking law, the question arose as
to whether or not state banks were to be subject to the defenses of
usury, and whether the specific paragraphs of the section which made
the banks liable only to an action for a recovery of the excessive in-
terest should govern, or the last paragraph, placing domestic banks on
a parity with national banks, was to control. The court, having previ-
ously held (50 N. Y. 95, 10 Am. Rep. 438) that national banks were
not immune from the usury laws of the state where such existed, took
the position that state banks were placed in parity with national banks
upon the subject, and used the following language:

"The question is whether, since the decision of this court that national banks in this state were subject to the usury laws of the state, and that the provisions of the national bank act, limiting forfeitures for taking usury, applied only to banks located in states and territories where no usury law existed, the act of the Legislature (chapter 163, p. 437, Laws 1870), is operative to limit the forfeiture for taking usury by the state banks organized under the general banking law of this state to the interest only. It is claimed that this act, in effect, has repealed the usury laws of the state as to state banks, and conferred upon them the exclusive privilege of taking usury at the risk only of a forfeiture of interest, which, as a preventive, is of no practical benefit. * * * It may be conceded that the first section of the act, standing alone, would supersede the usury laws, and operate as a repeal by implication, so far as applicable to banking associations. But the claim that this section is in force underrates the effect of, and misconstrues the second section of the act, which is: 'It is hereby declared that the true intent and meaning of this act is to place the banking associations organized and doing business as aforesaid, on an equality in the particulars in this act referred to with the national banks organized, under the act of Congress. * * *' (Page 57.) It follows that if national banks were, notwithstanding the national act, subject to the usury laws of the state, the state banks were also, or else the declared meaning of equality is nugatory. It is said that this renders the statute inoperative, and that this result must be avoided. This is a plausible, but not a valid or sound, position. * * * (Page 60.) It is also urged that the act may have beguiled the banks into the practice of taking usury, and that, therefore, it would be unjust to hold it inoperative. This argument is entitled to no weight. Up to the time of the decision of First National Bank of Whitehall v. Lamb, 50 N. Y. 95, 10 Am. Rep. 438, the state banks and national banks were upon an equality in this respect. They both doubtless supposed that usury might be exacted with impunity. After that decision there could be no delusion on the subject. nor was there any. * * * (Page 63.) The usury laws are applicable in all their force to national banks doing business within this state, and notes and obligations taken or discounted by them upon a usurious consideration are absolutely void. First Nat. Bank of Whitehall v. Lamb, 50 N. Y. 95, 10 Am. Rep. 438."

And for the foregoing reasons it was held (page 58): ·

"As the federal act has been adjudged not to apply to national banks located in this state, the court, in holding the act of 1870 inoperative, are but carrying out the express provisions of the act itself, and the declared intention of the Legislature, and, although the circumstances are exceptional, yet it is in conformity to established rules."

Summed up, as a result of these decisions, it was held to be the law that the expressed intention of the Legislature was to put national banks and state banks upon a parity in regard to usury, over the express language of the section to the effect that usurious transactions with state banks should result only in a forfeiture of interest. This continued to be the law of this state until the subject of the applicability of the state usury law to state or national banks came up in the United States Supreme Court at Washington in the case of Farmers' & Mechanics' Nat. Bank v. Dearing, 91 U. S. 29, 23 L. Ed. 196. In that case the United States Supreme Court held:

"The only forfeiture declared by the thirtieth section of Act June 3, 1864, c. 106 (13 Stat. 108), is of the entire interest which the note, bill, or other evidence of debt carries with it, or which has been agreed to be paid thereon, when the rate knowingly received, reserved, or charged by a national bank is in excess of that allowed by that section, and no loss of the entire debt is incurred by such bank, as a penalty or otherwise, by reason of the provisions

of the usury law of a state. (2) National banks organized under the act are instruments designed to be used to aid the government in the administration of an important branch of the public service, and Congress, which is the sole judge of the necessity for their creation, having brought them into existence, the state can exercise no control over them, nor in anywise affect their operation, except so far as it may see proper to permit." Farmers' & Mechanics' Nat. Bank v. Dearing, 91 U. S. 29, 23 L. Ed. 196.

In the case above cited the Supreme Court, in a unanimous decision, construing these provisions, laid down the broad principle that they were exclusive, and that no other acts could apply. The court said:

"These clauses, examined by their own light, seem to us too clear to admit of doubt as to anything to which they relate. They form a system of regulations. All the parts are in harmony with each other, and cover the entire subject. The offense of usury under this section is as great where the local law does not, as where it does, define the rate of interest. The same considerations apply in both cases. Why should Congress punish in one class of cases, and, so far as its action is concerned, exempt in the other? Why such discriminations? The result would be that in Pennsylvania, where the contract would be void only as to the unlawful excess, the bank would lose nothing but such excess, while in New York, under a contract precisely the same, except as to the identity of the lender, the entire debt would be lost to the bank. This would be contrary to the plainest principles of reason and justice. A purpose to produce or permit such a state of things ought not to be imputed to Congress, unless the circumstances are so cogent as to render that result inevitable. We find nothing within the scope of the subject of that character. The second proposition—that the state law, including its penalties, would apply if the first proposition be sound—is equally untenable. If the construction contended for were correct, the state law would have no bearing whatever upon the case. The national banks organized under the act are instruments designed to be used to aid the government in the administration of an important branch of the public service. They are means appropriate to that end. Of the degree of the necessity which existed for creating them, Congress is the sole judge. Being such means, brought into existence for this purpose, and intended to be so employed, the state can exercise no control over them, nor in anywise affect their operation, except in so far as Congress may see proper to permit. Anything beyond this is "an abuse, because it is the usurpation of power which a single state cannot give.' Against the national will, 'the states have no power, by taxation or otherwise, to retard, impede, burthen, or in any manner control the operation of the constitutional laws enacted by Congress to carry into execution the powers invested in the general government.' "

Thereafter, the subject came before our Court of Appeals in Hintermister v. First Nat. Bank, 64 N. Y. 214, where it was held (Allen, J.) :

"The Supreme Court of the United States having given an interpretation to the act of Congress regulating the interest which may be lawfully taken by national banks, and declaring the penalties for demanding or receiving interest at a greater rate than that allowed by law, adverse to the views of this court as expressed in Nat. Bank of Whitehall v. Lamb, 50 N. Y. 95, 10 Am. Rep. 438, neither that case nor that of Farmers' Bank of Fayetteville v. Hale, 59 N. Y. 53, can be longer considered as furnishing a rule for decision in cases within the principle of the adjudication by the federal court. The decisions of that court in all matters of federal jurisprudence and of the interpretation of the acts of Congress, are paramount to and binding upon all other courts."

It is thus evident that the national banking act is exclusive on the subject of usury with respect to the national banks, and covers the whole subject of usury, and therefore repealing other laws with respect to

usury so far as they might apply to national banks.  In the Dearing
Case an act almost identical with section 55 of the state banking law
was before the court for its consideration, and the Court of Appeals of
this state having decided (Farmers' Bank v. Hale, 59 N. Y. 53) that
it was the intention of the Legislature to create an equality or parity
between the national and state banks with respect to usury, and the
United States Supreme Court having decided that the state laws do not
apply on that subject, the conclusion is now irresistible that the state
usury law has now no application to state banks; that it has been by
implication repealed or nullified, so far as it may affect such banks, by
the provisions of section 55 of the banking law of New York; that the
banking law is exclusive on the entire subject of usury so far as it ap-
plies to or affects state banks; and that they are subject only to such
forfeitures and liabilities with respect to usurious transactions of any
kind as are to be found in that act and no others.

Defendant's counsel further contends that, if the act applies (and
which he denies), it only applies to transactions directly between a
bank and its customer, and not to indirect transactions, by means of
which the bank subsequently obtains possession of negotiable paper.
This contention is untenable.  The first clause of section 55 of the
banking law refers to the taking, receiving, or charging interest "on
every loan or discount made," and, further, "or upon any note, bill of
exchange, or other evidence of debt"; thus clearly indicating, by fair
intention and construction, all transactions with the bank relating to
notes and bills, whether direct or indirect.  Counsel for the defendant
has presented to the court authorities showing that defenses of usury
have been successfully interposed in actions brought by state banks and
cities as decisive of the case at bar (Flour City Nat. Bank v. Miller, 4
App. Div. 585, 38 N. Y. Supp. 503; Chatham Bank v. Betts, 37 N. Y.
356, and Union Bank of Rochester v. Benedict, 35 App. Div. 216, 54
N. Y. Supp. 721); and, while counsel is correct in his statement as to
the defense of usury having been interposed, upon a careful examination
of those authorities, I find that in none of the cases cited by him was
the objection raised, either at the trial or on appeal, as to the applicabil-
ity of the defense of usury against a bank, and consequently they are
not decisive of points or questions of law not raised or even adverted to.

At the trial or submission of this case to the court, the court was
asked by counsel for the defendant for permission to amend the answer
in certain of the separate defenses by incorporating therein certain
denials contained in one of the defenses; but, from the view taken of
the whole situation of this case now presented by the law and facts,
I fail to see how such denials, even if permitted to be incorporated in
the separate defenses, can be of avail to defendant.  These defenses
have been set forth as defenses, and, as such, they are not available
against a state or national bank.  There is, by the statute, a remedy
given for the taking of unlawful interest by a bank.  If the interest has
been paid to and received by the bank, twice the amount of the interest
paid in excess of the legal rate may be recovered if the action be
brought within two years therefor.  If actions be brought on the usur-

ious instrument, the forfeiture of the entire interest attaches, and is enforceable only when an action is brought thereon to enforce the usurious contract. Hintermister v. First Nat. Bank, 64 N. Y. 212. The defendant seeks to interpose the defense of usury as "separate defenses" to the causes of action set forth in the complaint as a bar to plaintiff's right of action and recovery; and, after a careful examination of all the authorities, I am of the opinion that the defense of usury is not available against a state or national bank. The motion of the defendant to amend his answer is denied. The motion of the plaintiff to dismiss all the separate defenses of the defendant is granted, and judgment for plaintiff directed accordingly.

Judgment accordingly.