LEO SCHLESINGER, as Receiver of THE FEDERAL BANK OF NEW YORK, Respondent, v. LUDWIG LEHMAIER, Appellant.

NEGOTIABLE INSTRUMENTS — DISCOUNT BY BANK OF USURIOUS NOTE — WHEN USURY A DEFENSE TO ACTION THEREON. National and state banks are entitled to protection in the purchase of negotiable paper only in so far as the officers of such banks act in good faith and not where they knowingly and intentionally join with wrongdoers in an attempt to evade the laws. Where, therefore, a bank discounts promissory notes which are void for usury, with full knowledge of the payment of an usurious rate of interest thereon, such usury may be pleaded as a defense to an action on the notes and the provision of the Banking Law (L. 1900, ch. 310, § 1) modifying, for the benefit of banking institutions, the general statutes in relation to usury, has no application.

*Schlesinger* v. *Lehmaier*, 117 App. Div. 428, reversed.

(Argued January 14, 1908; decided January 28, 1908.)

Appeal, by permission, from an order of the Appellate Division of the Supreme Court in the first judicial department, entered February 13, 1907, which reversed an order of the Appellate Term reversing a judgment in favor of plaintiff entered upon a decision of the City Court of New York, a jury having been waived.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Otto C. Sommerich* and *Maxwell C. Katz* for appellant. The transaction before the court is a transaction of the purchase and sale between the Federal Bank and the Globe Security Company; to such a class of transactions the penalties do not apply. The same instances which exempt the bank from forfeiture of the entire principal where usury is charged also impose upon the bank the penalty of double the interest or the forfeiture of the entire interest; if the penalty does not apply to a certain transaction, then in such a transaction the bank, like any other individual, is not exempt from the operation of the Usury Law, and the transaction in question being one of purchase and sale, there are no penalties, and, consequently, no exemptions, and the bank is, like any other individual, subject to the defense of usury. (*Joy* v. *Diefendorf,* 130 N. Y. 6; *Eastman* v. *Shaw,* 65 N. Y. 522; *Claflin* v. *Boorum,* 122 N. Y. 385; *Freeport Bank* v. *Hagemeyer,* 91 Hun, 194; *Mechanics' Bank* v. *Foster,* 44 Barb. 87; *Standen* v. *Brown,* 152 N. Y. 129; *Chase Nat. Bank* v. *Monroe,* 149 N. Y. 533.) Even granting that section 55 of the Banking Law is controlling, since national banks would not be free from the defense of usury between the original parties, if the national banks knew of the usury between the same, state banks supposedly on a par with national banks could not claim to be free from said defense. (*Railroad Co.* v. *Ashland Bank,* 12 Wall. 226; *Nichols* v. *Fearson,* 7 Pet. 103.) Section 55 of the Banking Law puts state banks on a par with national banks only in the particulars referred to therein. The particulars referred to therein

are not the purchase of a note with knowledge of usury in the inception thereof. (*Union Bank* v. *Gilbert*, 83 Hun, 417; *Chatham Bank* v. *Betts*, 37 N. Y. 356; *Union Bank* v. *Benedict*, 35 App. Div. 216; *Freeport Bank* v. *Hagemeyer*, 91 Hun, 194.)

*George W. Glaze* for respondent. The Usury Law has been repealed by implication by the Banking Law so far as applicable to banks and private bankers. (*Whitehall* v. *Lamb*, 50 N. Y. 95; *F. & M. Nat. Bank* v. *Dearing*, 91 U. S. 29; *Davis* v. *El. S. Bank*, 161 U. S. 283; *McCellan* v. *Chapman*, 164 U. S. 347; *Easton* v. *Iowa*, 188 U. S. 220; *Hazeltine* v. *C. Bank*, 183 U. S. 132; *Caponigri* v. *Altieri*, 165 N. Y. 255; *Hintermister* v. *F. Nat. Bank*, 64 N. Y. 214; *Bank of Monroe* v. *Finlay*, 6 Hun, 584; *Marine Bank* v. *Fisk*, 9 Hun, 363; *A. S. Bank* v. *Savery*, 18 Hun, 36.) The Federal and State banking laws cover the entire subject of usury so far as applicable to banks, and necessarily involve the purchase of usurious paper. (*Heckmann* v. *Pinkney*, 81 N. Y. 211; *Cromwell* v. *MacLean*, 123 N. Y. 485; *Easton* v. *Iowa*, 188 U. S. 237; *Nat. Bank* v. *Johnson*, 201 U. S. 277; *Hazeltine Case*, 183 U. S. 134; *C. Bank* v. *Pratt*, 115 Mass. 539; *Hintermister Case*, 64 N. Y. 214; *Bank of Monroe*, 6 Hun, 584; *Marine Bank* v. *Fiske*, 9 Hun, 363; *A. S. Bank* v. *Savery*, 18 Hun, 36.)

Haight, J. This action was brought by the receiver of the Federal Bank, a domestic corporation engaged in the banking business in the city of New York, to recover the amount of two promissory notes made by the defendant for $500 and $454.50, respectively, each made payable to the order of the maker and indorsed by him. The complaint alleges that before maturity the notes were discounted by the Federal Bank, and that the plaintiff as receiver now holds them. The answer, in substance, alleges that the notes described in the complaint were made by the defendant and delivered to the Globe Security Company in payment for another note of the

defendant held by that company and for the sum of $135.50 interest, which sum was far in excess of interest at the legal rate and was, therefore, usurious, and that the Federal Bank subsequently discounted the notes and received them, with full knowledge of the payment of such usurious rate of interest. Upon the trial the City Court awarded judgment for the plaintiff, holding that the facts alleged and set forth in the answer did not in law constitute a defense to the action.

We are again called upon to construe the provisions of the National Banking Act, so called, and our own Banking Law, based thereon, which is as follows: "Every bank and private and individual banker doing business in this state may take, receive, reserve and charge on every loan and discount made, or upon any note, bill of exchange or other evidence of debt, interest at the rate of six per centum per annum; and such interest may be taken in advance, reckoning the days for which the note, bill or evidence of debt has to run. The knowingly taking, receiving, reserving or charging a greater rate of interest shall be held and adjudged a forfeiture of the entire interest which the note, bill or evidence of debt carries with it, or which has been agreed to be paid thereon. If a greater rate of interest has been paid, the person paying the same or his legal representatives may recover back twice the amount of the interest thus paid, from the bank and private or individual banker taking or receiving the same, if such action is brought within two years from the time the excess of interest is taken. * * * The true intent and meaning of this section is to place and continue banks, and private and individual bankers on an equality in the particulars herein referred to with the national banks organized under the act of congress entitled 'An act to provide a national currency secured by pledges of United States bonds, and to provide for the circulation and redemption, thereof,' approved June the third, eighteen hundred and sixty-four." (L. 1870, ch. 163; L. 1892, ch. 689, § 55, as amended by L. 1900, ch. 310, § 1.)

The general statutes of our state forbid the taking of

interest upon the loan of money in excess of the rate pre-
scribed by law, and also render void all bonds, notes and other
contracts given to secure a loan made in violation thereof.
(2 R. S. 772, §§ 2, 5; L. 1837, ch. 430, § 1.) These statutes
still remain in full force as to individuals and corporations
except in so far as they have been modified or superseded by
the Banking Law enacted for the benefit of banking corpora-
tions and private and individual bankers, but the precise
extent of such modification is a question involving some diffi-
culty in its solution and has already been the subject of
discussion in this court. In the case of *Schlesinger* v. *Gil-
hooly* (189 N. Y. 1) the construction of the National Bank-
ing Act and of our state Banking Law was discussed in two
opinions, one written by CULLEN, Ch. J., and the other by
VANN, J., in which the chief judge reached the conclusion that
the statutes referred to only applied to cases where the banks
had been paid an unlawful rate of interest and that they had
no application to negotiable paper purchased by the banks
which had previously been tainted with usury; while VANN,
J., reached the conclusion that these statutes extended to and
covered negotiable paper purchased by the bank before
maturity in good faith without knowledge of its previous
taint. Two of my associates concurred with the chief judge
and two concurred with Judge VANN. WILLARD BARTLETT,
J., concurred with Judge VANN in the result, upon the ground
that, under the Negotiable Instruments Law, a *bona fide* pur-
chaser takes a note free from the defense of usury. The
judgment was, therefore, affirmed, thus holding that, where a
bank has in good faith discounted negotiable paper for value
before maturity without notice that it was already void for
usury, the defense of usury is not available, and that must
now be regarded as the law of this state.

The question we now have presented was not disposed of
in the former case, and is quite different. It is now contended
that the bank may purchase void paper of the holder, with
full knowledge that the maker has been compelled to pay a
usurious rate of interest, and that by such purchase the paper

becomes validated, and in the hands of the bank may be collected of the maker. If such an interpretation is adopted, then it practically nullifies our usury laws, for any person who has exacted usury for the loan of money may take his paper into a bank and arrange for its prosecution and thus evade the defense of usury. The decision of our court in the case of *Schlesinger* v. *Gilhooly* (*supra*) has already eliminated from our usury statutes their most drastic features, so far as banks are concerned, and no longer can a person put in ·circulation negotiable paper void for usury, which may be transferred to innocent banks who purchase in good faith without knowledge of its taint, and thus be deprived of the right to collect it from the maker.

Until a recent amendment of section 378 of the Penal Code the acceptance of an unlawful rate of interest for the use or loan of money was a misdemeanor and punishable criminally. The taking of usury is still a wrong and against the public policy of the state. If the statutes are to receive the construction contended for, then the officers of a bank may become parties to a wrong and, against the policy of the state, aid the wrongdoers in their receipt of usury by the taking of such paper and practically collecting it for them. Assuming, for the purposes of the argument, that national and state banks are governmental agencies, and that among the powers given to banks, either state or Federal, is that of purchasing negotiable paper, and that in the discharge of such powers they are entitled to protection, evidently such protection was only intended to apply in so far as the officers of such banks acted in good faith in accordance with the law, and not where they departed therefrom and knowingly and intentionally joined with wrongdoers in an attempt to evade the laws.

The learned Appellate Division appears to have entertained the view that the purchase of commercial paper with knowledge that it was void for usury did not place the bank in a worse position than it would have been in had it taken usurious interest itself. The answer to this is that the statute makes it different. The usury laws, as between individuals,

have not been changed, and as between the maker and the holder, if usury is exacted, the paper is still void and no recovery can be had thereon. Not so, however, with banks which have received unlawful interest; the paper is not affected or rendered void, but the bank is subjected to a forfeiture of all interest and to penalties for that which it has received. In *Caponigri* v. *Altieri* (165 N. Y. 255) we held that the penalties could be collected in an action brought for that purpose, but how could such an action be maintained. against the Federal Bank upon the paper in question? It has received no unlawful rate of interest. It has not violated any statute in this regard. The unlawful interest was collected by the Globe Company before the bank had become the purchaser of the paper. That company was not a banking corporation, and consequently is not liable for the penalties provided by the Banking Law. True, it forfeits its right to collect the balance remaining due upon the paper, and it may be liable for the interest received in excess of the legal rate; but, under the view of the Appellate Division, the maker would be deprived of his defense of usury, and also of his right to maintain an action for the penalties provided by the Banking Law. To my mind, the legislature never intended such an interpretation of the act. It pertains to negotiable instruments, and should be construed in connection with the other legislation upon the same subject. In the Negotiable Instruments Law it is expressly provided that a holder, who becomes such before maturity in good faith and for value without notice of any infirmity, holds the same " free from any defect of title of prior parties and free from defenses available to prior parties among themselves, and may enforce the payment of the instrument for the full amount thereof against all parties liable thereon." Here we have the legislative intent expressed in . clear and unmistakable language. It establishes a just and proper rule which protects the bank in making purchases of commercial paper in good faith before maturity, for value and without notice of infirmity. But where it purchases with actual knowledge of the infirmity or

defect, or knowledge of such facts that its action in taking the instrument amounted to bad faith, it is not protected.

I am, therefore, of the opinion that the matter set forth in the answer is sufficient in law to constitute a defense and that, consequently, the judgment of the Appellate Division should be reversed and the order of the Appellate Term affirmed, with costs to appellant in the Appellate Division and this court.

Cullen, Ch. J. I concur in the opinion of my brother Haight for reversal, but deem it proper to add a word explanatory of my position. In the case of *Schlesinger* v. *Gilhooly* (189 N. Y. 1) I dissented from the decision in an opinion. While I retain the views then expressed, I recognize fully the effect of the decision there made and accept it as a binding authority declaring the law to be that a bank acquiring, in good faith for value, commercial paper void between the parties for usury may recover thereon. In that case, however, the recovery was sought to be upheld on two separate grounds, the Banking Laws, State and National, and the Negotiable Instruments Law. Had a majority of the court placed their decision on either ground I should have felt the decision binding not only as to the point actually decided, but as to the propositions on which the decision was founded. I understand, however, that while my opinion in its entirety commanded the assent of two only of my associates, the member of the majority who based his decision on the effect of the Negotiable Instruments Law expressed his approval in that part which dealt with the effect of the Banking Laws, though it may be that approval was obiter, his action proceeding on a different question. Therefore, for the reasons stated in my former opinion as well as for those stated in the opinion of my brother Haight, now rendered, I concur in the reversal of the judgment appealed from.

Willard Bartlett, J. I concur in the opinion of Haight, J., for reversal — having concurred with the opinion

of the chief judge in *Schlesinger* v. *Gilhooly* (189 N. Y. 1), except as to the effect of the Negotiable Instruments Law, although the statement of such concurrence was inadvertently omitted from the report of that case.

WERNER and HISCOCK, JJ., concur with HAIGHT, J., and CULLEN, Ch. J., and WILLARD BARTLETT, J., also concur in memoranda with HAIGHT, J.; GRAY and CHASE, JJ., dissent.

Judgment accordingly.