CARNEGIE TRUST CO. v. CHAPMAN.

(Supreme Court, Appellate Division, First Department. December 6, 1912.)

BANKS AND BANKING (§ 187*)—LOANS—INTEREST—ACTION—SET-OFF AND COUNTERCLAIM.

Under Banking Law (Consol. Laws 1909, c. 2) § 74, providing for the interest chargeable by state banks, and declaring that the meaning of the section is to place and continue such banks and private and individual bankers on an equality with national banks organized under the act of Congress, one sued by a bank on a promissory note cannot by way of counterclaim or set-off defeat the recovery by proving the imposition of illegal commissions or interest, which have already been paid, the only recovery for these being by independent action; but, where such commissions entered into the consideration of the note and have never been paid, they may be recovered by set-off or counterclaim.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 720–724; Dec. Dig. § 187.*]

Dowling, J., dissenting.

Appeal from Trial Term, New York County.

Action by the Carnegie Trust Company against Charles W. Chapman. From a judgment for plaintiff, and an order denying its motion for new trial, defendant appeals. Reversed and remanded, unless plaintiff consent to remittitur.

Argued before INGRAHAM, P. J., and CLARKE, SCOTT, MILLER, and DOWLING, JJ.

Everett P. Wheeler, of New York City, for appellant.
Frank M. Patterson, of New York City, for respondent.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

INGRAHAM, P. J.   The action was upon a promissory note dated the 7th of December, 1909, whereby the defendant promised to pay to the order of the plaintiff, on demand, the sum of $67,009.23, with interest.   The complaint alleges that the defendant was entitled to a credit of $8,891, the amount received by the plaintiff for the sale of certain collateral securities sold by the plaintiff, and that there is now due and owing from the defendant to the plaintiff the sum of $58,-119.73, with interest.   The only allegation of the complaint denied in the answer is that contained in the seventh clause of the complaint relating to the credit due to the plaintiff.   The answer then sets up, first, an affirmative defense to the whole cause of action; second, a partial defense; and, third, a counterclaim—and demands judgment that the note declared on and the notes of which it was a renewal be declared fraudulent and void, that what was called an escrow card be declared to have been procured by fraud, and that the sales of certain of the collateral securities were unauthorized and void, and that the plaintiff deliver to the defendant the remainder of said collateral, or pay to the defendant the value thereof, and for other and further relief.

The first defense alleged the procuring by the defendant from the plaintiff of certain loans of money; that these loans were usurious and void, in consequence of the plaintiff's exacting from the defendant certain commissions for making the loans; that the plaintiff held, on or about October 7, 1909, certain notes of the defendant which were unpaid, and claimed to have sold certain securities held to secure the payment of these notes, and by the purchase thereof had acquired legal title to the same, but that at said date the plaintiff had not acquired legal title to the said securities, but held that as trustee for the defendant, and as pledgee of the defendant; that on October 8, 1909, the plaintiff was pressing the defendant for payment of the said notes, and threatened to sue him for the amount of the principal and interest, and the defendant was desirous of obtaining time for the payment of the same, and insisted that he was entitled, in accordance with plaintiff's agreement, to an extension of said loans; that the plaintiff refused to perform its said agreement, and took undue advantage of the necessities of the defendant, and compelled him to submit to certain terms exacted by the plaintiff; that the plaintiff then and there informed defendant that it owned 200 shares of the stock of a corporation known as the American Piano Company; that said stock, as plaintiff well knew, was of no market value; that defendant then and there informed plaintiff that he did not want said stock and would not take it; that, notwithstanding, the plaintiff, as a condition of renewing the notes above mentioned, and consolidating the same into a single note, and extending the time of payment, substituted therefor, and in order to conceal the real consideration of the transaction, and to evade the interest and usury laws of the state of New York, required of the defendant, as a condition of plaintiff's forbearing its demand for payment of the said four notes for a period of 60 days, that the defendant would purchase and accept and agree to pay the sum of $12,000 for the said shares of stock of the Amer-

ican Piano Company, and agree to pay in addition $2,500; that the purpose of such insistance and nominal sale to the defendant was to enable the plaintiff to charge as consideration of the said forbearance and of the loan hereinafter mentioned the sum of $12,000, and the defendant agreed to pay and did pay said sum, and also the sum of $2,500 in addition thereto, for the forbearance and loan hereinafter mentioned; that such payments were in addition to the payment of legal interest upon the amount of said loan; that for the purpose of renewing the four promissory notes, and purchasing said collateral security which plaintiff claimed to have disposed of, defendant delivered to plaintiff a certain promissory note dated October 8, 1909, whereby the plaintiff agreed to pay to the defendant $66,345.78 in 60 days after October 8, 1909, with interest, which last-mentioned promissory note and the whole thereof was illegal, usurious, and void to the extent of $20,421.13 thereof, and that there was included in the amount thereby promised to be paid $12,000 for the purchase of this Piano stock and $2,500 as commissions for the extension of the loan; that, when this note for $66,345.78 matured, the defendant, on the demand of the plaintiff, on December 7, 1909, executed the note mentioned in the complaint, and that sole consideration of the said note was the usurious notes hereinbefore mentioned; that the said last-named note for $67,009.53 was and is usurious and void to the extent of at least $20,696.35; that there was included within the amount therein provided to be paid illegal interest upon the loans amounting to $1,283, and $663.45 illegal interest which had been forfeited by reason of the usurious demands specified.

The second partial defense was that the defendant had on deposit with the plaintiff the sum of $5,500, or thereabouts, belonging to the defendant, which should be applied in part payment of the amount actually due on the notes mentioned in the complaint. The defendant also set up in the answer a counterclaim, which involved substantially the same allegations set up as a defense to the note, and then demanded the affirmative relief hereinbefore specified.

Upon the trial the court submitted certain specific questions to the jury, whereby the jury found that the defendant had on deposit with the plaintiff on April 18, 1910, the date of the commencement of the action, the sum of $4,559.10, whereupon the plaintiff asked for the direction of a verdict of $44,817.39. Upon consideration, the court directed a verdict for the plaintiff for $40,714.13, and dismissed the equitable counterclaim; and from the judgment entered upon that verdict the defendant appeals.

There are but two questions which it is necessary to discuss in considering this appeal. The first is the right of the defendant to offset the amount of these commissions which the plaintiff exacted from the defendant as a condition for continuing the loans; and, second, whether the plaintiff can recover the so-called purchase price for the 200 shares of Piano stock which the defendant was compelled to purchase of the plaintiff as a condition of renewing the various loans represented by the four notes which became due on October 8, 1909. It was proved by the defendant that the plaintiff had exacted from the

defendant various commissions for making and extending various loans which the defendant procured from the plaintiff, and that those commissions were in excess of legal interest and were included in the note in suit. The defendant, however, in his answer expressly alleges that these various sums of money, known as commissions, were paid by the defendant to the plaintiff as consideration for the making or extending of the loans represented by the defendant's notes then held by the plaintiff; and it would appear that these exactions were illegal and in violation of the laws of this state. Such sums of money having been paid by the defendant to the plaintiff, the question is whether they can be recovered or offset in this action as against the amount included in the note which the defendant had promised to pay to the plaintiff.

The plaintiff is a trust company organized under the laws of the state of New York. By section 74 of the Banking Law (chapter 10, Laws of 1909), which provided for the interest chargeable by a bank and a private and individual banker doing business in this state, it was provided that the true intent and meaning of this section— ·

"is to place and continue banks and private and individual bankers on an equality in the particulars herein referred to with the national banks organized under the act of Congress entitled 'An act to provide a national currency secured by pledges of United States bonds and to provide for the circulation and redemption. thereof,' approved June third, eighteen hundred and sixty-four."

In Brown v. Marion Nat. Bank, 169 U. S. 416, 18 Sup. Ct. 390, 42 L. Ed. 801, in discussing the effect of the National Banking Law, it is said:

"The last section clearly makes a difference between interest which a note, bill, or other evidence of debt held by a national bank 'carries with it, or which has been agreed to be paid thereon,' and interest which has been 'paid.' Interest included in a renewal note, or evidenced by a separate note, does not thereby cease to be interest within the meaning of section 5198, and become principal. If a bank which violates that section sues upon the note, bill, or other evidence of debt held by it, the debtor may insist that the entire interest, legal and usurious, included in his written obligation and agreed to be paid, but which has not been actually paid, shall be either credited on the note or eliminated from it, and judgment given only for the original princi-- pal debt, with interest at the legal rate from the commencement of the suit."

But in Haseltine v. Central Nat. Bank, 183 U. S. 132, 22 Sup. Ct. 50, 46 L. Ed. 118, following the prior adjudications, it was held that, where usurious interest has been paid to a national bank, the remedy afforded by section 5198 of the United States Revised Statutes (U. S. Comp. St. 1901, p. 3493) is exclusive, and is confined to an independent action to recover such usurious payments. This case was followed in Schuyler Nat. Bank v. Gadsden, 191 U. S. 451, 24 Sup. Ct. 129, 48 L. Ed. 258. And in Schlesinger, as Rec'r, v. Gilhooly, 189 N. Y. 1, 81 N. E. 619, 12 Ann. Cas. 1138, it was held that, in order to give effect to the evident intent of the Legislature of this state, the statute enacted in 1870 to put the state banks upon an equality with national banks should have the same interpretation and effect as was given to the act of Congress; that section 1 of the act of 1870

(re-enacted as section 74 of the Banking Law) was operative and superseded the Usury Law. See, also, Schlesinger v. Kelly, 114 App. Div. 546, 99 N. Y. Supp. 1083; Caponigri v. Altieri, 165 N. Y. 255, 59 N. E. 87.

In view of the allegations of the answer, that these sums in addition to the interest allowed by law were actually paid by the defendant to the plaintiff, and that there was in each case, in form at least, the delivery of a check by the defendant to the plaintiff covering the extra commissions or interest, we think that the defendant could not offset or counterclaim the amount of this illegal interest or commission in an action on the note; but his exclusive remedy was an action to recover the penalty provided for by law for the taking of the illegal interest or commission, and that the court below, therefore, properly refused to allow as an offset or defense to the note the amount of such illegal commission or interest.

The transaction involving the alleged purchase of the Piano Company stock, however, stands upon a different footing. The plaintiff was the owner of this stock, which was itself of little, if any, value. As a condition of renewing the loans, the plaintiff insisted upon the defendant purchasing this stock, and the purchase price was included in the note in renewal of which the note in suit was given. There was no other consideration for the insertion of the sum of $12,000 in the obligation made by the defendant to the plaintiff. This stock was never delivered to the defendant, but was retained by the plaintiff as additional security for the loan. There was here no payment of any interest by the defendant to the plaintiff. The plaintiff merely added to the defendant's obligation what was called the purchase price of the stock, the stock itself being retained in the possession of the plaintiff, and, so far as appears, it still is in its possession, or in that of the state superintendent of banking as liquidator.

From the facts as proved in this case we do not consider that the defendant ever became liable to the plaintiff to pay that $12,000. The purchase of valueless property, or property at an exorbitant price, is one of the familiar devices to cover the exaction of usurious interest; and it is apparent that the plaintiff, in forcing the sale of this valueless stock upon the defendant for the consideration of $12,000, was in effect securing to itself an obligation of the defendant to pay the sum of $12,000 without any real consideration. The plaintiff retained and still has the stock. The defendant never ratified or in any way confirmed the sale of the stock to him, and has received no possible benefit from it. Its purchase was exacted as a method by which the plaintiff was to receive the defendant's obligation to pay $12,000 in addition to the legal interest; and I think, therefore, under the decision in Brown v. Marion Nat. Bank, 169 U. S. 416, 18 Sup. Ct. 390, 42 L. Ed. 801, that the defendant was entitled to insist that this sum, which had not been actually paid, should be credited on the note or eliminated from it, and judgment given only for the principal debt, with interest at the legal rate from the commencement of the suit.

At the end of the defendant's case the court granted a motion to dismiss the first defense, to which the defendant excepted; and this

defense included the demand that the defendant was entitled to credit on this note for the sum of $12,000 which he had agreed to pay for the purchase of the Piano Company stock, Upon a new trial, the plaintiff would have the right to meet the defendant's testimony as to the sale of this stock.

My conclusion is that the judgment and order must be reversed, and a new trial ordered, with costs to the appellant to abide the event, unless the plaintiff will stipulate to reduce the amount of the judgment by $12,000, with interest from October 8, 1909, in which event the judgment, as so modified, and the order appealed from, will be affirmed, without costs of this appeal.

CLARKE, SCOTT, and MILLER, JJ., concur.

DOWLING, J. I dissent, in so far as a reversal is directed unless plaintiff elects to accept a reduction of the judgment in the sum of $12,000, with interest, and am in favor of the affirmance of the judgment.

---

(153 App. Div. 638.)

WARD et al. v. CHELSEA EXCH. BANK.

(Supreme Court, Appellate Division, First Department. December 6, 1912.)

1. PLEADING (§ 194*)—PARTIAL DEFENSES—DEMURRER.

A special defense to an equitable action for the recovery of property of a lunatic, which on its face shows that it applies only to part of the property mentioned in the complaint, when not described as a partial defense, as required by Code Civ. Proc. § 508, is subject to demurrer.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 444–446, 449–452; Dec. Dig. § 194.*]

2. PLEADING (§ 194*)—AFFIRMATIVE DEFENSES.

Where the complaint sets forth an equitable cause of action, the relief demanded being obtainable only in equity, a special defense, merely alleging that plaintiffs have a full, adequate, and complete remedy at law for any and all of the matters alleged in the complaint, is subject to demurrer, because admitting all the facts in the complaint and not setting up new facts in avoidance.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 444–446, 449–452; Dec. Dig. § 194.*]

Appeal from Special Term, New York County.