(85 Misc. Rep. 312)

### EMPIRE TRUST CO. v. COLEMAN et al.

(Supreme Court, Special Term, Nassau County. April, 1914.)

1. USURY (§ 117*)—USURIOUS CONTRACTS AND TRANSACTIONS—SUFFICIENCY OF EVIDENCE.

    In an action to foreclose mortgages, evidence *held* to show that the mortgagor paid to the mortgagee $7,200, in addition to the interest reserved, as a commission or bonus for the loan.

    [Ed. Note.—For other cases, see Usury, Cent. Dig. §§ 328–340; Dec. Dig. § 117.*]

2. USURY (§ 52*)—USURIOUS CONTRACTS OR TRANSACTIONS—COMMISSION OR BONUS FOR LOAN.

    A mortgagor paid to the mortgagee $7,200, as a commission or bonus for a loan of $165,000, in addition to the regular interest reserved. *Held*, that the payment was usurious.

    [Ed. Note.—For other cases, see Usury, Cent. Dig. §§ 109–113; Dec. Dig. § 52.*]

3. USURY (§ 117*)—USURIOUS CONTRACTS AND TRANSACTIONS.

    In an action to foreclose mortgages, evidence *held* to show that the assignment and extension of two existing mortgages for $40,000 and $25,000 and the execution of a new mortgage for $95,000 were all one inseparable transaction, and hence usury in connection with the $95,000 mortgage affected the whole transaction.

    [Ed. Note.—For other cases, see Usury, Cent. Dig. §§ 328–340; Dec. Dig. § 117.*]

4. BANKS AND BANKING (§ 315*)—TRUST COMPANY—USURIOUS LOANS.

    Banking Law (Consol. Laws, c. 2) § 74, relating to the rate of interest which every bank and private and individual banker may take, receive, etc., on every loan, and declaring that the taking, receiving, etc., of a

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

greater rate than 6 per centum shall .be adjudged a forfeiture of the en-; tire interest, and providing that the true intent of this section is to place and continue banks and private bankers on an equality, in the particulars herein referred to, with national banks, etc., applies to a mortgage loan. by a trust company, though national banks cannot. take mortgage loans.

[Ed. Note.—For other' cases, see Banks and Banking, Cent. Dig. .§§; 1219–1221;  Dec. Dig. § 315.*]

5. USURY (§ 117*)—EVIDENCE—BURDEN OF PROOF.

Though, under Pen. Code, § 378, as amended by Laws 1895, c. 72, and Laws 1904, c. 661, usury is no longer a crime, nevertheless in civil cases it must be established by a preponderance of the evidence sufficiently· strong to rebut the presumption of its absence, which attends an innocent transaction.

[Ed. Note.—For other cases, see Usury, Cent. Dig. §§ 328–340;  Dec. Dig. § 117.*]

6. USURY (§ 75*)—PENALTY.

If usury be established, then no matter what form it may take, nor how circuitous a method has been adopted to conceal its existence, the law visits upon the lender the penalty for its exaction.

[Ed. Note.—For other cases, see Usury, Cent. Dig. § 148;  Dec. Dig. § 75.*]

Action to foreclose a mortgage by the Empire Trust Company against Charles W. Coleman, executor, etc., and others. Judgment for plaintiff for principal only; the unpaid interest being declared forfeited· for usury.

Olin, Clark & Phelps, of New York City (Stephen H. Olin, of New York City, of counsel), for plaintiff.

Lemuel E. Quigg, of New York City, for defendant Coleman,

Alfred T. Davison, of Brooklyn, for defendant Donohue.

BENEDICT, J. The plaintiff, a trust company organized under the Banking Law of the state of New York (Consol. Laws, c. 2), is seeking in this action to foreclose three mortgages representing the aggregate sum of $160,000 of principal, all covering the same real property, and each of which mortgages was made by Charles Donohue, now deceased. All of the defendants have defaulted in pleading except the defendants Charles W. Coleman, as executor of and trustee under the last will of said Charles Donohue, and Gertrude L. Donohue, a daughter, of said decedent. These two defendants have by their answers admitted all of the allegations in the complaint, except that which alleges that there is now due on each mortgage the principal sum secured thereby, with interest from June 24, 1913. They have set up usury as a separate defense to each mortgage, and prayed that the mortgages be declared usurious, and therefore null and void.

The real property covered by these mortgages is situated at Inwood, on Jamaica Bay, in Queens county. The first mortgage was made in 1907 to the Title Insurance Company of New York for $40,000; the second, in 1908 to the Chelsea Realty Company for $25,000. In 1909, the two mortgages last mentioned having become due, the said Charles Donohue arranged to borrow from the Windsor Trust Company $160,- 000, secured by mortgages of the real property above referred to, to

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

bear 6 per centum interest, and to run for two years. The parties agreed that, instead of paying off the two mortgages above mentioned and executing a new mortgage for $160,000, the then existing mortgages, aggregating $65,000, should be assigned to the Windsor Trust Company and extended, and an additional mortgage should be executed by said Donohue for $95,000. This was accordingly done on June 24, 1909. Thereafter, and in accordance with the provisions of the Banking Law, the Windsor Trust Company was merged in the plaintiff, Empire Trust Company, which thereupon succeeded to all the rights and interests of the said Windsor Trust Company in the mortgages above mentioned, and is subject to any legal defenses theretofore existing against the same. The mortgages for $40,000 and $25,000, respectively, were extended by the above-mentioned agreement to June 24, 1911, at 6 per cent., and the mortgage for $95,000, which bore the same rate of interest, also by its terms became due on the same day.

The said Charles Donohue died on April 17, 1910, seised of the mortgaged premises and leaving a will which was probated in the Surrogate's Court of the county of New York on May 3, 1910, and letters testamentary thereon were issued to the defendant Charles W. Coleman, who duly qualified as such executor and is now acting as such.

[1, 2] In support of the defense of usury, considerable testimony was introduced by the defendants, which pointed irresistibly to the fact that the said Charles Donohue, at the time the loan of $160,000 was closed, had in a circuitous manner paid to the Windsor Trust Company $7,200, and that the payment had been made by Judge Donohue on June 24, 1909, and on June 30, 1909, it was received by the company, not by way of interest on the loans then held by it, but as a bonus or commission for the extension granted upon the existing mortgages and for the making of the new mortgage. The plaintiff's counsel argues that the testimony did not show conclusively that this payment had been made by Judge Donohue to the company; but all doubt on the point was removed by the testimony of the last witness called by the defense, John Alvin Young, who, at the time the loan was made, was the president of the Windsor Trust Company. He was not cross-examined, nor was any evidence introduced to impeach his testimony. He testified that the $7,200 had been received by the company from Judge Donohue as a commission for making the loan, over and above the interest. The interest originally reserved by the new mortgage for $95,000, and by the agreements extending the old mortgages, was 6 per cent., and this payment by the borrower to the lender of $7,200 in addition to lawful interest was therefore clearly usurious.

[3] The learned counsel for the plaintiff has urged very strongly that, if there were usury connected with the transaction, it could only apply to the $95,000 mortgage and would not affect in any way the two prior mortgages, which the Windsor Trust Company took by assignment. I cannot assent to this proposition. It is evident from the exhibits and testimony submitted that Judge Donohue negotiated with the Trust Company for a loan of $160,000, and that both borrower and lender considered that a loan of that sum was being made. Judge Don-

ohue signed a paper (Defendant's Exhibit C) in which he refers to the loan of $160,000 and directs the Windsor Trust Company to pay to the Title Insurance Company of New York the sum of $66,194.33, which was the amount due at that date upon the mortgages then in existence for $40,000 and $25,000, respectively, which were then taken over by the Windsor Trust Company and simultaneously extended for two years by that corporation. He also directed that the sum of $93,-805.67, which was the difference between the first-mentioned sum and $160,000, be paid to him, and this arrangement was carried out by the Windsor Trust Company, as appears from the letter dated June 25, 1909, addressed to it by Rollins & Rollins, the attorneys who represented it upon the closing of the loan. (See Defendant's Exhibit F.) Since the enactment of the mortgage tax act it has become a common practice, in making loans on bond and mortgage, to take, where possible, assignments of existing mortgages to avoid payment of the mortgage tax. It does not appear from the record why, in this instance, assignments were taken of the mortgages for $40,000 and $25,000; but —whatever the reason—I am of the opinion that assignments and extensions of these mortgages and the execution of the new mortgage for $95,000 were all one inseparable transaction, for which an usurious commission of $7,200 was exacted by the Trust Company, and whatever penalty attaches to usury in connection with the $95,000 mortgage must apply with equal force to the mortgages for $40,000 and $25,000.

[4] The answering defendants claim that, usury having been shown, all of the bonds and mortgages are void under the provisions of section 370 of the General Business Law, both as to principal and interest, while counsel for the plaintiff urges that the most severe penalty which should be inflicted on the mortgagee is forfeiture of interest on the $95,000 mortgage between the last payment thereof and the date of the commencement of the action. I am unable to assent to either proposition. The Banking Law provides:

"Sec. 74. Rate of Interest. Every bank and private and individual banker doing business in this state may take, receive, reserve and charge on every loan and discount made, or upon any note, bill of exchange or other evidence of debt, interest at the rate of six per centum per annum; and such interest may be taken in advance, reckoning the days for which the note, bill or evidence of debt has to run. The knowingly taking, receiving, reserving or charging a greater rate of interest shall be held and adjudged a forfeiture of the entire interest which the note, bill of exchange or other evidence of debt carries with it, or which has been agreed to be paid thereon. If a greater rate of interest has been paid, the person paying the same or his legal representatives may recover twice the amount of the interest thus paid from the bank or private or individual banker taking or receiving the same, if such action is brought within two years from the time the excess of interest is taken. The purchase, discount or sale of a bona fide bill of exchange, note or other evidence of debt payable at another place than the place of such purchase, discount or sale at not more than the current rate of exchange for sight draft, or a reasonable charge for the collection of the same, in addition to the interest, shall not be considered as taking or receiving a greater rate of interest than six per centum per annum. The true intent and meaning of this section is to place and continue banks and private and individual bankers on an equality in the particulars herein referred to with the national banks organized under the act of Congress entitled 'An act to provide a national currency secured by pledges of United States bonds, and to provide for the circulation and redemption thereof,' approved June third, eighteen hundred and sixty-four."

"Sec. 186. Powers of Corporation. Upon the filing of any such certificate of authorization of a trust company, the persons named therein and their successors shall thereupon and thereby become a corporation and in addition to the powers conferred by the general corporation law and the stock corporation law, shall have power: * * * 11. To exercise the powers and possess the privileges conferred on banks and individual bankers by sections seventy-four and seventy-five of this chapter, subject to the restrictions contained in said sections. * * * "

The defendants have urged upon the court that these provisions have no bearing on the case at bar, on the ground that national banks cannot make mortgage loans, and therefore the application of the provisions of the section to mortgage loans is not necessary to put state banking institutions on a par with national banks. This very question has recently been considered by Mr. Justice Greenbaum in Public Bank of N. Y. v. London, 147 N. Y. Supp. 738, where he says:

"It is, however, urged by defendants' counsel, citing National Bank v. Matthews, 98 U. S. 621, 25 L. Ed. 188, that a national bank is prohibited under section 5136 of the United States Revised Statutes from taking a mortgage upon real estate except to secure debts previously contracted, and that therefore a loan made upon real estate security by a national bank is not protected under the United States statutes applicable to the taking of usury by such banks, but that the general usury law controls. From this, defendant contends, flows the corollary proposition that, since the express purpose of the clause in the state statute above quoted is to place state banks and bankers upon an equality with national banks, this court is required to hold that the plaintiff is not exempt from the operation of the usury law applicable to ordinary individuals. Aside, however, from the argument that may be fairly made that there is no statute in this state which prohibits a private banker from taking a mortgage upon real property as security for a debt simultaneously contracted, a reading of the opinion in National Bank v. Matthews, supra, does not bear out the interpretation that counsel has placed upon it. The opinion states (98 U. S. at page 625, 25 L. Ed. 188) that 'section 5136 does not in terms prohibit a loan on real estate, but the implication to that effect is clear.' It was, however, held that, where a loan was made upon a note and deed of trust, the transaction was neither within the letter nor the meaning of the prohibitions relied upon, and, further, that in no event could a borrower successfully defeat payment of the loan upon the doctrine of ultra vires, since the sovereign alone may take proceedings against the bank for the violation of the statute. In Schuyler National Bank v. Gadsden, 191 U. S. 451, 24 Sup. Ct. 129, 48 L. Ed. 258, the United States Supreme Court held in effect that the taking of a real estate mortgage by a national bank as security for a debt coincidentally contracted fell within the provisions of the national banking act governing the question of usury."

I agree entirely in the conclusions of my Brother Greenbaum, the more so because by section 193 of the Banking Law it is provided that a trust company may invest its capital, surplus, undivided profits, and deposits "in such real or personal securities as it may deem proper."

[5, 6] Usury is no longer a crime in all cases, as it was until section 378 of the Penal Code was amended by chapter 72 of the Laws of 1895 and by chapter 661 of the Laws of 1904; but, nevertheless, it must in civil cases be established by a preponderance of the evidence sufficiently strong to rebut the presumption of its absence which attends an innocent transaction. If, however, usury be established, then no matter what form it may take, nor how circuitous a method has been adopted to conceal its existence, or to give it the appearance of innocence, the law of this state visits upon the lender the penalty for

its exaction. If the lender be an individual or a corporation not engaged in banking, the penalty consists of a forfeiture of the principal of the loan and the interest. If the lender be a bank or private banker, then, as has been noted, the law forfeits the entire interest upon the loan, and where the unlawful interest has already been paid it permits a recovery of twice its amount, provided an action therefor be brought within two years. In the present case the borrower, as I have found, paid $7,200 to the lender at the time when the loan was made, a sum equal to 4½ per centum upon the entire loan, and although in form this payment was called a commission, yet by means of it the lender received that amount of additional interest or usury upon the loan. This it could not do without incurring the penalties of the statute; but being a banking institution, and a suit to recover the excess interest not having been brought within two years from the date of the payment; the only penalty which it suffers is the loss of the unpaid interest upon $160,000 from June 24, 1913, to which date interest has been paid. See Perkins v. Smith, 116 N. Y. 441, 23 N. E. 21; Carnegie Trust Company v. Chapman, 153 App. Div. 783, 785, 138 N. Y. Supp. 715; Schlesinger v. Kelly, 114 App. Div. 547, 550, 99 N. Y. Supp. 1083; Schlesinger v. Lehmaier, 191 N. Y. 69, 73, 83 N. E. 657, 16 L. R. A. (N. S.) 626, 123 Am. St. Rep. 591; Schlesinger v. Gilhooly, 189 N. Y. 13, 81 N. E. 619, 12 Ann. Cas. 1138; Jenkins v. Neff, 163 N. Y. 320, 329, 57 N. E. 408; Metropolitan Trust Co. v. Truax, 67 Misc. Rep. 588, 122 N. Y. Supp. 739; Haseltine v. Central Bank of Springfield, No. 2, 183 U. S. 132, 134, 22 Sup. Ct. 50, 46 L. Ed. 118; Re Wilde's Sons (D. C.) 133 Fed. 562; Id., 144 Fed. 972, 75 C. C. A. 601; Barnet v. Muncie Nat. Bank, 98 U. S. 555, 558, 25 L. Ed. 212.

All unpaid interest on the three mortgages will therefore be forfeited, and judgment will be decreed for the amount of principal due, $160,000. Submit findings in accordance herewith within one week, together with judgment of foreclosure and sale.