SCHLESINGER v. KELLY.

(Supreme Court, Appellate Division, First Department. July 12, 1906.)

BANKS AND BANKING—USURY LAWS—EFFECT—NOTES PURCHASED IN GOOD FAITH.

Rev. St. U. S. §§ 5197, 5198 [U. S. Comp. St. 1901, p. 3493], limit the interest which national banks may take, and provides that the charging of a greater rate of interest shall forfeit the entire interest, and Banking Law, Laws 1892, p. 1869, c. 689, § 55, places state banks and individual bankers upon a parity with national banks in this respect. Usury Law, 1 Rev. St. (1st Ed.) pp. 771, 772, pt. 2, c. 4, tit. 3, § 5, provides that the taking of usury shall result in the forfeiture of the entire debt. *Held*, that this provision of the usury law is, by the statutes first quoted, rendered inapplicable to banks, not only with respect to notes originally given to the bank, but with respect to usurious notes purchased by the bank in good faith.

Appeal from Trial Term, New York County.

Action by Leo Schlesinger, as receiver of the Federal Bank of New York, against Frank Kelly. From a judgment for plaintiff, defendant appeals. Affirmed.

Argued before O'BRIEN, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and HOUGHTON, JJ.

David C. Myers, for appellant.

Kneeland, La Fetra & Glaze (George W. Glaze, of counsel), for respondent.

CLARKE, J. This action was brought by the plaintiff, as receiver of the Federal Bank of New York, to recover upon two promissory notes, amounting, in the aggregate, to the sum of $2,798, made by the defendant. The Federal Bank was a state bank. The notes in suit were acquired by the receiver as part of the assets of said bank when he took possession thereof under his appointment by the court. The plaintiff concedes that the notes were usurious notes at their inception, and that the defendant's dealings which resulted in the giving of the notes were had with one David Rothschild or Louis Rothschild, doing business as J. Gould & Co., or the Globe Security Company, or one Muirhead, and not directly with the Federal Bank, and the notes so given were given to one of the aforesaid persons, and at no time did the defendant have dealings with or borrow directly from the Federal Bank. The defendant concedes that the bank was a bona fide holder of the notes in due course; that the notes were complete and regular upon their face; that the bank became such holder before maturity, and without notice of any infirmity in the instruments, or defect in the title of the person negotiating them. The defendant claims that the notes in suit, not having been given directly to the plaintiff's assignor, and being admittedly usurious in their inception, were absolutely void, no matter into whose hands they came. The plaintiff claims that the Federal Bank, having been a state bank, was on a parity by express statute with national banks, and was not subject to the provisions of the usury law declaring usurious notes void, and that, being the holder in due course for value without notice, it held the instruments free from any defect of title of prior parties, and free from defenses available to prior parties among themselves, and is entitled to enforce payment for the full amount thereof against all parties liable thereon.

It is now settled beyond controversy, as the result of a series of cases in the Court of Appeals and in the Supreme Court of the United States, that because of the federal legislation now embraced in sections 5197 and 5198 of the Revised Statutes of the United States [U. S. Comp. St. 1901, p. 3493], and of the statutory law of this state, first embodied in chapter 163, p. 437, of the laws of 1870, and now appearing substantially without change in section 55 of the banking law (chapter 689, p. 1869, of the Laws of 1892), that the provisions of the usury law (1 Rev. St. [1st Ed.] pp. 771, 772, pt. 2, c. 4, tit. 3, § 5) declaring usurious notes void have been repealed by implication when said notes had been given to, and said usurious interest received by, a national bank or state bank or private banker. Section 5197, Rev. St. U. S., provides

that any banking association may take and charge upon any note interest at the rate allowed by the laws of the state, territory or district where the bank was located, and no more, and section 5198, Rev. St. U. S., provides that the taking or charging a rate of interest greater than that allowed by the preceding section, when knowingly done, should be deemed a forfeiture of the entire interest which the note carried with it, or which had been agreed to be paid thereon, and that, in case a greater rate of interest had been paid, there could be recovered back twice the amount of the interest thus paid, provided such action was commenced within two years from the time the usurious transaction occurred.    Section 55 of the banking law of this state makes substantially the same provisions, and concludes as follows:

"The true intent and meaning of this section is to place and continue banks and private and individual bankers on an equality in the particulars herein referred to with the national banks authorized under the act of Congress entitled 'An act to provide a national currency, secured by pledges of United States bonds, and to provide for the circulation and redemption thereof,' approved June 30, 1864."

In Whitehall v. Lamb, 50 N. Y. 95, 10 Am. Rep. 438, the Court of Appeals held that national banks in this state were subject to the usury laws of the state, and that the provisions of the national bank act limiting forfeitures for taking usury applied only to banks located in states and territories where no usury law existed.

In Farmers' Bank v. Hale, 59 N. Y. 53, following the decision in the former case, and applying the provisions as to parity, the court held that, it having been decided that national banks located in this state are subject to the usury laws thereof, those laws were not repealed by chapter 163, p. 437, of the laws of 1870, as to state banks, but that they were also subject thereto.

Thereafter, the Supreme Court of the United States, in Farmers' & Mechanics' National Bank v. Dearing, 91 U. S. 29, 23 L. Ed. 196, in a case originating in this state, overruled the doctrine as laid down by the Court of Appeals, and held that the only forfeiture was that provided by the act of Congress, and that no loss of the entire debt was incurred by a national bank, as a penalty or otherwise, by reason of the provisions of the usury law of the state.    The court said:

"These clauses, examined by their own light, seem to us too clear to admit of doubt as to anything to which they relate. They form a system of regulations. All the parts are in harmony with each other, and cover the entire subject.  *   *   *   The national banks organized under the act are instruments designed to be used to aid the government in the administration of an important branch of the public service. They are means appropriate to that end. Of the degree of the necessity which existed for creating them Congress is the sole judge. Being such means, brought into existence for this purpose. and intended to be so employed, the states can exercise no control over them, nor in any wise affect their operation, except in so far as Congress may see proper to permit."

Thereafter the Court of Appeals in Hintermister v. First National Bank, 64 N. Y. 212, held that, since the Supreme Court of the United States had given its interpretation to the act of Congress, the cases of the National Bank of Whitehall v. Lamb and Farmers' Bank of Fayettville v. Hale, supra, could no longer be considered as furnish-

ing a rule of decision in cases within the principle of the adjudication by the federal court, and said:

"It follows that in order to give effect to the evident intention of the Legislature of this state, the statute enacted in 1870 to put the state banks upon an equality with the national banks should have the same interpretation and effect as is given to the act of Congress. Any other interpretation would do violence to the clearly expressed will of the Legislature, do injustice to the state institutions, and give undue effect to the legislation of Congress, so far as it is hostile to the state banks. Both cases may therefore be regarded as overruled."

Exclusive control over national banks and their freedom from the operation of state laws, as laid down in the Dearing Case, supra, has been reasserted in Haseltine v. Central National Bank, 183 U. S. 131, 22 Sup. Ct. 49, 46 L. Ed. 117, and Easton v. Iowa, 188 U. S. 220, 23 Sup. Ct. 288, 47 L. Ed. 452. The effect of these decisions and these statutes is that, if an usurious note is directly given to a state bank, and said bank takes, receives, or reserves interest beyond the amount allowed by law, that nevertheless the note is not void, and the sole forfeiture is that provided in regard to the interest, and the right of action to recover double the amount of interest paid within two years. The amount of the note is a valid and enforceable debt.

The appellant concedes the force and effect of the foregoing cases, but asserts that the principle therein laid down applies only when the usurious transaction is made directly with the bank, and the bank receives, or reserves, charges, or is paid, the usurious interest. The argument is that the usury law has not been repealed as between private parties, and that, as a note usurious in its inception between private parties is by the statute void, it never can acquire validity; and cites Claflin v. Boorum, 122 N. Y. 385, 25 N. E. 360, where the court said:

"A note void in its inception for usury continues void forever, whatever its subsequent history may be. It is as void in the hands of an innocent holder for value as it was in the hands of those who made the usurious contract. No validity can be given to it by sale or exchange, because that which the statute has declared void cannot be made valid by passing through the channels of trade."

That case was not a case involving a bank, but was between private individuals, and involved the sale of accommodation paper, which the court held was merely a loan of money; the purchaser being the lender, and the seller the borrower. None of the cases or statutes affecting banks hereinbefore alluded to were cited or were involved in that case, and the result of applying the rule there laid down to the case at bar would be this: That whereas, when the bank was the wrongdoer, and took the usurious interest, that although the usury statute declared the note void, the banking statutes made it valid as to its face value, and the wrongdoer escaped all forfeiture except in so far as the interest was concerned; while if the bank were an absolutely innocent party, and had taken the note in good faith for a valuable consideration and without notice, receiving therefor only the legal interest, yet nevertheless it would be punished for the illegal act of others by the loss of the full amount advanced by it. Such a result would be so inequitable and illogical as to demonstrate that the

reasoning must be fallacious. The answer to it is clearly found in the cases already cited.

In Farmers' Bank v. Hale, 59 N. Y. 53, the court said:

"It may be conceded that the first section of the act, standing alone, would supersede the usury laws, and operate as a repeal by implication, so far as applicable to banking associations."

That statement of the effect of the statute becomes effective by reason of the Dearing Case, supra, and the reiteration of the doctrine by the Supreme Court of the United States that the federal statutes were exclusive in their application to national banks, and absolutely withdrew such banks from the operation of the state laws. That being true, no provision of the state law declaring an usurious note void would affect a national bank, not only if it were guilty of usury, but also if it bought or discounted usurious paper.

The Supreme Court in the Easton Case, 188 U. S. 220, 23 Sup. Ct. 288, 47 L. Ed. 452—after citing the Dearing Case, as follows: "The states can exercise no control over national banks, or in anywise affect their operation, except in so far as Congress may deem proper to permit. Anything beyond this is an abuse, because it is the usurpation of power, which a single state cannot give." And Davis v. Elmira Savings Bank, 161 U. S. 275, 16 Sup. Ct. 502, 40 L. Ed. 700: "National banks are instrumentalities, and, as such, necessarily subject to the paramount authority of the United States. It follows that an attempt by a state to define their duties or control the conduct of their affairs is absolutely void, wherever such attempted exercise of authority conflicts with the laws of the United States, and either frustrates the purpose of the national legislation, or impairs the efficiency of those agencies of the federal government to discharge the duties for the performance of which they were enacted. These principles are axiomatic, and are sustained by the repeated adjudications of this court"—stated: "Our conclusions, upon principle and authority, are that Congress, having power to create a system of national banks, is the judge as to the extent of the powers which should be conferred upon such banks, and has the sole power to regulate and control the exercise of their operations."

Therefore, applying the parity principle, as the United States statutes cover the whole question of usury as affecting banks, and therefore being exclusive, so far as national banks are concerned, and excluding from their operations our state law in that regard, it follows that the usury statute has been repealed by implication so far as state banks are concerned, not only where the bank itself has been a direct participator in the usurious transaction, but where it is the innocent holder in due course of the paper which in the hands of private parties would be void for usury in its inception. The argument that a void note could never acquire validity applies with as much force and effect to the usurious note taken by the bank, but, as we have seen, such a note, by the operations of the state and federal statutes, is not void; in other words, the mandate of the state has yielded to the superior command of the nation as to national banks, and by its own statute the state has assimilated such rule to its own banks.

It follows that the judgment appealed from should be affirmed, with costs.

O'BRIEN, P. J., and McLAUGHLIN, and HOUGHTON, JJ., concur.

LAUGHLIN, J. (concurring). I agree with Mr. Justice Clarke that the judgment should be affirmed, but for different reasons than those expressed in his opinion. I doubt whether section 5197 of the Revised Statutes of the United States, regulating the charge of interest by National banks, and section 55 of the banking law of our state (chapter 689, p. 1869, Laws 1892), in effect extending the same rights and privileges to state banks as are conferred upon national banks by the act of Congress, are susceptible of the construction that they relate not only to discounts of paper by a bank, but also to discounts by any party prior to the time the bank becomes a holder. I am of opinion, however, that the effect of the enactment of section 96 of the negotiable instruments law (Laws 1897, p. 732, c. 612), which provides that "a holder in due course holds the instrument free from any defect of title of prior parties and free from defenses available to prior parties among themselves and may enforce payment of the instrument for the full amount thereof against all parties liable therefor," is to render the defense of usury inapplicable to a bona fide holder of negotiable paper acquiring the same in due course.

Mr. Crawford, in the preface to the first edition of his Annotated Negotiable Instruments Law, states that the first draft of the law was prepared by him for a subcommittee of the committee on commercial law for the commissioners of the different states on uniformity of laws; that the draft was submitted to the commissioners on uniformity of laws at the conference in Saratoga in 1896, at which 27 commissioners, representing 14 different states, were present; that his draft was revised by the commissioners in a manner to make changes in the existing laws which he had not felt at liberty to incorporate in the original draft, and, as thus amended, adopted. In an explanatory note to the negotiable instruments law as reported to the Legislature in 1897 by the commissioners of statutory revision, it appears that the negotiable instruments law as prepared by the commission on uniformity of laws in the United States was introduced in the senate of the state of New York by Senator Lexow, and that at the request of the judiciary committee of the senate the commission of statutory revision rearranged the bill, and added "several statutes relating to negotiable instruments which were not included in the bill as originally introduced, but which were in the commercial paper law prepared by this commission." It thus appears that the Legislature, in enacting the negotiable instruments law, had in mind that there was a concerted move to have that law adopted in the various states and territories, and it has been enacted in practically the same form in most of the states and some of the territories of the Union. The only case to which our attention has been called in which a court of review has been called upon to decide whether the negotiable instruments law supersedes, as to bona fide holders in due course for value, local laws declaring negotiable paper tainted

with usury null and void, is Wirt v. Stubblefield, 17 App. D. C. 283. In that case, Alvey, C. J., delivering the opinion of the court, construing the same provision of the negotiable instruments law enacted by Congress for the District of Columbia, said:

"We know, moreover, that the great and leading object of the act, not only with Congress, but with the large number of the principal commercial states of the Union that have adopted it, has been to establish a uniform system of law to govern negotiable instruments wherever they might circulate or be negotiated. It was not only uniformity of rules and principles that was designed, but to embody in a codified form, as fully as possible, all the law upon the subject, to avoid conflict of decisions, and the effect of mere local laws and usages that have heretofore prevailed. The great object sought to be accomplished by the enactment of the statute to free the negotiable instrument, as far as possible, from all latent or local infirmities that would otherwise inhere in it to the prejudice and disappointment of innocent holders as against all the parties to the instrument professedly bound thereby. This clearly could not be effected so long as the instrument was rendered absolutely null and void by local statute, as against the original maker or acceptor, as is the case by the operation, indeed, by the express provision, of the statutes of Charles and Anne."

I agree with the views expressed in that opinion. It is, I think, evident that the purpose of the commission representing the various states of the Union in preparing the draft of the negotiable instruments law, and of the various Legislatures in enacting it, will be thwarted if section 96 is to receive the construction that, even as against bona fide holders in due course for value, the maker of the note may successfully defend, upon the ground that in the inception of the note some local law was violated. The force and effect of the statutes against usury will not be seriously impaired by the construction which I think should be given to the negotiable instruments law. The usury laws remain in full force, but to facilitate the free circulation of negotiable paper by protecting holders thereof in due course for value in their right to enforce the same, the usury laws are to that extent superseded by the provisions of section 96 of the negotiable instruments law (Laws 1897, p. 732, c. 612). Of course, it was perfectly competent for the Legislature to do this. The only question is whether or not it so intended, and I am of opinion that it did.

The case of Strickland v. Henry, 66 App. Div. 23, 73 N. Y. Supp. 12, does not hold that the negotiable instruments law has not to any extent superseded the usury law. It was there merely held that a holder of commercial paper, who received the same at a usurious discount, is not protected under the negotiable instruments law, where it appears that the note never had a legal inception, and that its first transfer was at the usurious discount. The court there say: "The holder is bound to know the character of the paper he is dealing with, and, if it turns out to be accomodation paper, the transaction is usurious." Of course, a person taking negotiable paper must determine at his peril whether or not it has had an inception, but, having ascertained that fact, I think it was the purpose and intent of the Legislature to relieve him from any latent infirmity, as by a discount at a usurious rate of interest at its inception, or other analogous latent infirmities.

I therefore vote to affirm the judgment.