SABINE v. PAINE et al.

(Supreme Court, Appellate Division, Second Department. February 5, 1915.)

1. BILLS AND NOTES (§ 63*)—EXECUTION—VALIDITY—INCEPTION—TRANSFER.
Where defendant, desiring to raise money, executed her note to the order of her agent, that he might obtain the money by selling the note, it had no validity until it was transferred to a third person.
[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 95–103; Dec. Dig. § 63.*]

2. BILLS AND NOTES (§ 354*)—PURCHASE—AMOUNT.
Where a note is a valid obligation at the time it is transferred to a third person, he may purchase it for less than its face, though the price paid may be a circumstance bearing on the bona fides.
[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 904, 905; Dec. Dig. § 354.*]

3. BILLS AND NOTES (§ 296*)—TRANSFER—INDORSEMENT BY MAKER.
Where the maker of a note indorses it, he thereby only warrants his own contract, and therefore such indorsement lends no strength thereto.
[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 667–679; Dec. Dig. § 296.*]

4. BILLS AND NOTES (§ 363*)—TRANSFER—BONA FIDE HOLDER.
Though a transferee of negotiable paper may have been negligent in taking it, and may have omitted precautions which a reasonably prudent man would have taken, yet, unless he acted in bad faith, his title will prevail, in the absence of proof of actual notice of a defect therein.
[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 790, 791, 960, 962; Dec. Dig. § 363.*]

5. BILLS AND NOTES (§ 26*)—INDORSEMENT—USURY.
Defendant, desiring to raise money, executed and delivered to her agent her note to his order for $2,100, payable in four months, with directions to sell the same. The agent, after procuring defendant to indorse the note, sold it to plaintiff's husband for plaintiff's account for $1,850. *Held* that, since the note was not a valid obligation in the hands of the agent, nor until transferred to plaintiff, the transfer to plaintiff constituted, not a sale of the note, but a loan of money at a usurious rate of interest, which avoided the note, as provided by General Business Law (Consol. Laws, c. 20) § 373, which invalidity was not affected by the Negotiable Instruments Law (Consol. Laws, c. 38).
[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 31, 34; Dec. Dig. § 26.*]

Thomas, J., dissenting.

Appeal from Trial Term, Suffolk County.

Action by C. Olivia Sabine against Maggie S. Paine, impleaded, etc. From a judgment in favor of defendant Paine, and from an order denying plaintiff's motion for a new trial, she appeals. Affirmed.

See, also, 148 App. Div. 730, 132 N. Y. Supp. 813.

Argued before JENKS, P. J., and BURR, THOMAS, STAPLETON, and RICH, JJ.

Robert H. Elder, of New York City (Herman Silverman, of New York City, on the brief), for appellant.

Hector M. Hitchings, of New York City, for respondent.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

BURR, J. On October 8, 1909, M. S. Paine executed and delivered to Eugene F. Vacheron her promissory note to his order for $2,100, payable four months after date. Subsequently she indorsed it. Vacheron also indorsed it; his name being written under hers. The note thereafter came into the hands of plaintiff. In an action upon the note, the defense of usury was interposed. Plaintiff appeals from a judgment in defendant's favor, entered upon the verdict of a jury, and from an order denying a motion for a new trial upon the minutes.

It would be necessary to reverse this judgment and order for error in rulings upon evidence, unless, disregarding all improper testimony, defendant was entitled to a direction of a verdict in her favor. The payee of the note, Vacheron, was the agent and attorney of defendant. He was called as a witness for the plaintiff, and upon cross-examination, against plaintiff's objection and exception, was permitted to testify to various transactions between himself and defendant, · some of which were wholly irrelevant to this controversy; and defendant was afterward permitted to go on the stand and contradict his testimony. It is not impossible that, before this case reached the jury, the minds of its members were led away from the real issue in the case to consider whether Vacheron had faithfully discharged his duties as defendant's agent. It is incumbent upon us, therefore, to determine whether defendant was entitled to the direction of a verdict. The following facts are undisputed:

Plaintiff is the widow, and was formerly the wife, of John B. Sabine, a practicing lawyer in New York. At the date of the transaction here considered, she had an account in the People's Trust Company, and her husband was authorized to draw checks thereon. He not only drew all of the checks, but also made all of the deposits to its credit. Plaintiff and defendant never met until after this note matured. On a previous trial, Sabine was called as a witness. Having since died, the testimony which he then gave was read to the jury upon the new trial. After testifying that he was his wife's agent in the transaction, he testified that he bought the note in question from Eugene F. Vacheron on October 20, 1909, and gave him therefor three checks upon his wife's account, one for $1,600, one for $100, and the third for $150, all of which checks were subsequently paid. They amounted in the aggregate to $1,850, and represented the purchase price of this note for $2,100, dated October 8, 1909, and payable four months thereafter. There is a conflict of testimony whether defendant's indorsement was made, as she testifies, "when the note was made out," or whether the note was brought back to her for such indorsement. Vacheron says that, after offering the note for sale to others, he finally offered it to Sabine, and after a conversation with him he went back to defendant with the note, and told her that Sabine would buy the note if she would indorse it on the back, guaranteeing its payment. He testifies that she then did so, and he took it back to Sabine and sold it to him. That is all that the evidence discloses respecting the transfer of this note.

[1] It cannot be now disputed that, as between Vacheron and defendant, the note had, in the first instance, no validity. It was given to him to sell. She was then in need of money, and she told him that

he might "pay $500 if it was necessary to have it discounted." We shall also assume that plaintiff was the "holder in due course" of the note in suit. Negotiable Instruments Law (Consol. Laws, c. 38 [Laws 1909, c. 43]) § 91. If we consider, for the sake of the argument, that all knowledge which her husband had plaintiff is chargeable with, and for all of his acts she is responsible, still there is nothing to contradict the evidence that he took the note without knowledge or actual notice of the defect therein, and relying upon the presumption that the note was given for a good consideration. Sabine v. Paine, 148 App. Div. 730, 132 N. Y. Supp. 813.

[2] If it was at that time a valid obligation, she had the right to purchase it at less than its face, although the price paid may be a circumstance bearing upon "bona fides." Canajoharie National Bank v. Diefendorf, 123 N. Y. 191, 25 N. E. 402, 10 L. R. A. 676. We are not unmindful that Sabine and Vacheron occupied rooms in the same suite of offices, although not engaged in business together, and we shall assume that Sabine asked Vacheron to take the note back for defendant's indorsement before he purchased it. The Negotiable Instruments Law, supra (section 116), provides that:

"Every indorser, who indorses without qualification, warrants to all subsequent holders in due course: * * * 2. That the instrument is at the time of his indorsement valid and subsisting."

And it has been held that a third person, indorser, could not impeach a note so indorsed for usury between the original parties. Horowitz v. Wollowitz, 59 Misc. Rep. 520, 110 N. Y. Supp. 972.

[3] Whatever the rule may be as to third persons who are indorsers, when the indorser is also the maker of the obligation, we cannot see how any strength is added to the instrument by reason of such indorsement. It is like a person warranting his own contract; but, if that contract is void by reason of some statutory provision as to the making thereof, his warranty can be no stronger than the contract itself. Sabine appears to have been uninformed as to the bona fides of the note. There is no evidence that he had any actual knowledge on the subject. He may have supposed the law to be as stated in the case above cited, and assumed by this method to remove all possible question respecting the note's validity.

[4] But the rights of the holder of negotiable paper cannot be defeated without proof either of actual notice of the defect in title or bad faith on his part, established either by direct or circumstantial evidence. Negotiable Instruments Law, supra, § 95. He may have been negligent in taking the paper, and omitted precautions which a prudent man would have taken. Nevertheless, unless he acted mala fide, his title, according to settled doctrine, will prevail. Cheever v. Pittsburgh, etc., R. R. Co., 150 N. Y. 59, 66, 44 N. E. 701, 34 L. R. A. 69, 55 Am. St. Rep. 646; Second Nat. Bank v. Weston, 172 N. Y. 250, 64 N. E. 949; Hibbs v. Brown, 112 App. Div. 214, 98 N. Y. Supp. 353. There is not the slightest evidence either of bad faith or of actual notice, and plaintiff's agent was entirely justified in assuming that the note was just what it purported to be, a valid obligation in the hands of Vacheron. But, at its inception, it was disposed of for a sum which

would result in taking more than the lawful rate of interest upon the sum secured to be paid thereby.

[5] And the next question is: Did this constitute the contract void for usury? The taking of usury is forbidden (General Business Law [Consolidated Laws, c. 20; Laws 1909, c. 25] § 371), and "all * * * notes * * * whereupon or whereby there shall be reserved or taken, or secured or agreed to be reserved or taken, any greater sum * * * for the loan or forbearance of any money * * * than is above prescribed [$6 upon $100 for every year] shall be void." (Id. § 373). If this note was not a valid obligation in Vacheron's hands, then this transaction was not a sale of such an obligation, but the loan of money secured to be paid thereby.

It may be urged with some force that, so far as plaintiff is concerned, there is no evidence of a mutual agreement between her and defendant for the payment of additional interest (Morton v. Thurber, 85 N. Y. 550), and that, if any such sum was reserved, it was reserved and paid to her agent without her knowledge, and that she received no part thereof (Stillman v. Northrup, 109 N. Y. 473, 17 N. E. 379). We think, however, that the evidence in this case warrants the conclusion that plaintiff, at least by acquiescence, became a party to the transaction in all of its features. She did, indirectly, receive an amount equal to the excess taken; that is, she did not advance to her agent all that the note called for, a part of which he reserved to himself, paying over the residue to defendant. The entire sum advanced in connection with the transaction was advanced from her funds in the People's Trust Company. Her balance therein remaining was undiminished by the amount of the excess of the value of the note, with lawful discount deducted, over the sum actually paid. To that extent she did receive this excess, and may be said to have acquiesced in the receipt thereof by seeking to hold defendant liable for the entire amount of the note. In addition, the testimony as to the very broad powers of her agent in the transaction constrains us to hold that she must be treated as though she herself had conducted the same.

One single question remains: Under the Negotiable Instruments Law, is a note, otherwise void for usury, invalid in the hands of "a holder in due course"? If so, then the errors in the trial may be disregarded, for defendant was entitled to a direction of a verdict in her favor; if not, then the action must be tried again. There are conflicting decisions upon this point in the lower courts. We think the question has not been finally determined by the Court of Appeals. It seems desirable that it should be. The Negotiable Instruments Law provides that:

"A holder in due course holds the instrument free from any defect of title of prior parties and free from defenses available to prior parties among themselves, and may enforce payment of the instrument for the full amount thereof against all parties liable thereon." Section 96.

Before the passage of that statute, it was the law that:

"A note void in its inception for usury continues void forever, whatever its subsequent history may be." Claflin v. Boorum, 122 N. Y. 385, 25 N. E. 360.

In Klar v. Kostiuk, 65 Misc. Rep. 199, 119 N. Y. Supp. 683, a majority of the Appellate Term in the First Department held that the defense of usury between the original parties to commercial paper is no longer available against a subsequent bona fide holder in due course. In Strickland v. Henry, 66 App. Div. 23, 73 N. Y. Supp. 12, this court held that the former Negotiable Instruments Law (Laws 1897, c. 612), identical in language with the present law, had not changed or affected the rule as above stated. And again, in Oppikofer v. Murphy, 146 App. Div. 581, 131 N. Y. Supp. 168, this court restated the original rule, relying upon Strickland v. Henry, supra. But in the latter case the provisions of the Negotiable Instruments Law seem not to have been called to the attention of the court, nor considered in its opinion. And in the former case the judgment was reversed upon the question of whether plaintiff was the holder in due course, and its language is not necessarily controlling.

When this case was here upon a former appeal (Sabine v. Paine, supra), this court repeated the statement that, if in its inception the transaction was tainted by usury, the subsequent transfer before maturity did not validate it, but held that at that time there was a question for the jury whether there was a valid consideration for the note between the original parties. In this case, also, the Negotiable Instruments Law seems not to have been considered. If there was any question as to the validity of the note between the original parties upon the previous trial, we think that no such question arises in the present case. It clearly had no inception until its transfer to Sabine.

In Schlesinger v. Kelly, 114 App. Div. 546, 99 N. Y. Supp. 1083, plaintiff, who was a receiver of a federal bank, and into whose hands notes signed by the defendant had come, brought suit upon the same, and the defendant contended that the notes, being usurious in their inception, were absolutely void, no matter into whose hands they came. A majority of the court, without expressing any opinion as to the effect of the Negotiable Instruments Law upon the paper in question, held that the provision of the state usury law had been repealed by implication, so far as they related to state banks. And this conclusion was based, first, upon the provisions of the federal Banking Law (Rev. St. U. S., § 5197 [U. S. Comp. St. 1913, § 9758]) when read in connection with section 55 of the state Banking Law (Laws 1892, c. 689, as amended by Laws 1900, c. 310), which statute, it was held, was intended to, and did, put state banks on an equality with national banks in respect to the penalty for taking an excessive rate of interest. The United States Supreme Court has held the provisions of the federal act affected national banks within this state, and that loss of the entire debt was not incurred as a penalty or otherwise by reason of the provisions of the usury law. Farmers' & Mechanics' Nat. Bank v. Dearing, 91 U. S. 29, 23 L. Ed. 196. Judge Laughlin, however, placed his affirmance of the judgment upon the ground that section 96 of the Negotiable Instruments Law rendered the defense of usury inapplicable to the bona fide holder of negotiable paper securing the same in due course.

The question of the applicability of the usury law to state banks was again considered by the Court of Appeals in Schlesinger v. Gilhooly, 189 N. Y. 1, 81 N. E. 619, 12 Ann. Cas. 1138. This case was affirmed in the Appellate Division (116 App. Div. 914, 101 N. Y. Supp. 1143) on the authority of Schlesinger v. Kelly, supra. In that case the court affirmed the judgment appealed from. The prevailing opinion was written by Judge Vann. Upon the threshold of the opinion, he stated that he would not pass upon the effect of the Negotiable Instruments Law, and then proceeded to discuss the effect, first, of the National Banking Act, and then of the state Banking Law. Although he said in his opinion that "the notes in question were void as between the original parties thereto, and they would have continued void in the hands of any individual to whom they might have been transferred," we think we are right in concluding that in this respect he was only stating the law as it existed in this state before the passage of the Negotiable Instruments Law, the effect of which he stated he would not consider. Judges Gray and Chase concurred with Judge Vann. Judge Willard Bartlett concurred for affirmance, upon the ground that under the Negotiable Instruments Law a bona fide purchaser took a note free from the defense of usury. Chief Judge Cullen and Judges Werner and Hiscock dissented, and in his dissenting opinion Judge Cullen said:

"If, however, the decisions in this case were to proceed on the effect of the Negotiable Instruments Law, I should confine myself to the expression of my vote. Though I cannot concur in such a decision, I appreciate that it would eliminate from the usury laws their most harsh and drastic features, and probably be far more just than the provisions of the old law. Such a decision would inure to the benefit of all purchasers in good faith of commercial paper."

Shortly thereafter the Court of Appeals again considered the status of state banks in the case of Schlesinger v. Lehmaier, 191 N. Y. 69, 83 N. E. 657, 16 L. R. A. (N. S.) 626, 123 Am. St. Rep. 591, and in that case held that the national and state banks are entitled to protection in the purchase of negotiable paper originally usurious, only in so far as the officers of such banks act in good faith, not where they knowingly and intentionally join with wrongdoers in an attempt to evade the laws. Where, therefore, a bank discounts promissory notes which are void for usury, with full knowledge of the payment of an usurious rate of interest thereon, such usury may be pleaded as a defense to an action on the notes, and the provisions of the state Banking Law, modifying for the benefit of banking institutions the general statutes in relation to usury, have no application. In that case, the court, speaking of the usury law, said:

"These statutes still remain in full force as to individuals and corporations, except in so far as they have been modified or superseded by the Banking Law, enacted for the benefit of banking corporations and private and individual bankers."

It is true that in the same opinion the court said:

"In the Negotiable Instruments Law it is expressly provided that a holder, who becomes such before maturity, in good faith, and for value, without notice of any infirmity, holds the same 'free from any defect of title of

prior parties and free from defenses available to prior parties among themselves, and may enforce the payment of the instrument for the full amount thereof against all parties liable thereon.' Here we have the legislative intent expressed in clear and unmistakable language. It establishes a just and proper rule, which protects the bank in making purchases of commercial paper in good faith, before maturity, for value, and without notice of infirmity. But where it purchases with actual knowledge of the infirmity or defect, or knowledge of such facts that its action in taking the instrument amounted to bad faith, it is not protected."

I fail to see why, if the language of the Negotiable Instruments Law is applicable at all, it should be limited in its effect to banks, and why the "just and proper rule," which the learned judge states, should not relate to individuals also. In this opinion five of the judges concurred, two only dissenting, and the ground of their dissent is not stated. Inasmuch as this decision, which, so far as we are informed, is the latest decision on this question of the court of last resort, leaves the matter in doubt, and inasmuch as this court, in the cases above referred to, has held that the Negotiable Instruments Law did not effect any change in the previous existing law, we conclude that the errors committed on the trial should be disregarded as immaterial errors, and that the judgment and order should be affirmed, upon the ground that, although the plaintiff was a holder in due course for value, the note had no valid inception until its purchase and discount by plaintiff's agent, that this discount was at a usurious rate for the sum loaned, and that the Negotiable Instruments Laws has not changed the previous existing law, which made the paper void even in the hands of a holder in due course and for value.

Judgment and order affirmed, with costs. All concur, except THOMAS, J., who dissents, on the ground that the husband had no authority to make the usurious contract, and that plaintiff had no knowledge of the condition of the bank account, drew no checks against it during her husband's life, and did nothing to ratify the transaction.