CLARKE v. TAYLOR.    (No. 7037.)

(Supreme Court, Appellate Division, First Department.    April 9, 1915.)

BANKS AND BANKING ⬥181—PRIVATE BANKERS—USURY—BANKING LAW.

   Under Banking Law (Consol. Laws, c. 2) § 74, providing that charging more than 6 per cent. interest shall forfeit the interest only, in a suit on a note for $80 carrying a usurious rate of interest, taken by plaintiff, a private banker, plaintiff was entitled to judgment for the amount of the note, with legal interest; Banking Law, § 314, providing that no person or corporation shall charge or receive any interest greater than the legal rate upon a loan of less than $200 secured on chattels named, under the penalty of forfeiture of the loan, having no application, since such section was not intended to be applied to private bankers, it being inconceivable that both sections should be re-enacted by the same consolidating act, if one were intended to repeal the other.

   [Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 686–700; Dec. Dig. ⬥181.]

   Hotchkiss, J., dissenting.

Appeal from Appellate Term, First Department.

Action by James Rae Clarke against J. Howard Taylor. Judgment for plaintiff in the Municipal Court was affirmed by the Appellate Term, and defendant appeals. Affirmed.

---

⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGH-
LIN, DOWLING, and HOTCHKISS, JJ.

Huber B. Lewis, of New York City, for appellant.
Albert L. Phillips, of New York City, for respondent.

McLAUGHLIN, J.    This action was brought in the Municipal
Court of the City of New York to recover $60 and interest, a balance
alleged to be due on a promissory note for $80.   The note was dated
March 30, 1912, payable 30 days after date, to the order of the plain-
tiff, a private banker.   The defendant pleaded, and upon the trial
sought to prove, that the note was usurious and void under section 314
of the Banking Law as it then existed.   Such evidence was excluded
on the ground that that section did not apply to one doing business as
a private banker.   Judgment was rendered for the plaintiff for the
amount of the note, with interest, together with the costs of the action,
from which defendant appealed to the Appellate Term.   That court
affirmed the judgment, and from its determination defendant, by per-
mission, appeals to this court.

By an act of Congress passed in 1864 (Act June 3, 1864, c. 106, 13
Stat. 99 [U. S. Comp. St. 1913, § 9758]) national banks were author-
ized to charge interest upon loans at the rate allowed by the law of the
state or territory in which the bank was located, and no more.   The
same act fixed the penalty for exacting interest in excess of such rate
as the forfeiture of the entire interest upon the loan, and provided,
further, that, if excess interest had been paid to the bank, twice the
amount of such excess might be recovered, provided an action for that
purpose were commenced within two years from the date of the us-
urious transaction.   Section 30.   In 1870 the Legislature of the state
of New York, with the expressed intention of placing state banks of
this state on an equality with national banks in this particular, fixed
the legal rate of interest at 7 per cent. per annum, and provided the
same penalty as the act of Congress above referred to for charging
interest in excess of that rate.   Chapter 163, Laws of 1870.

The Court of Appeals held that the act of Congress, to which ref-
erence has been made, did not relieve a national bank from the pro-
visions of the statutes of the state of New York relating to usury
(First National Bank of Whitehall v. Lamb, 50 N. Y. 95, 10 Am. Rep.
438), nor did chapter 163 of 1870 of the Laws of the state of New
York relieve state banks (Farmers' Bank v. Hale, 59 N. Y. 53).   The
Supreme Court of the United States subsequently held, in Farmers' &
Mechanics' Bank v. Dearing, 91 U. S. 29, 23 L. Ed. 196, that the
view expressed by the Court of Appeals in First National Bank of
Whitehall v. Lamb, supra, was erroneous.   Following this decision,
the Court of Appeals held that, as the provision of the act of the Leg-
islature amending the Banking Law of the state (chapter 163, Laws of
1870) was intended to put state banks upon an equality with national
banks in respect to interest on loans and the penalty for taking usurious
interest, it should receive the same interpretation as the act of Con-
gress relating to national banks, and, as an interpretation had been
given to the act of Congress by the Supreme Court, the same interpre-

tation would be applied to the state law. Hintermister v. First National Bank, 64 N. Y. 212. As was said in Schlesinger v. Kelly, 114 App. Div. 546, 99 N. Y. Supp. 1083:

"The effect of these decisions and these statutes is that if an usurious note is directly given to a state bank, and said bank takes, receives, or reserves interest beyond the amount allowed by law, that nevertheless the note is not void, and the sole forfeiture is that provided in regard to the interest and the right of action to recover within two years double the amount of interest paid. The amount of the note is a valid and enforceable debt."

In 1880 chapter 163 of the Laws of 1870 was amended so as to include private or individual bankers (chapter 567, Laws of 1880), and thereafter it was held that the usury laws did not apply to them any more than they did to national and state banks; in other words, they were placed in the same position that the banks were with reference to the rate of interest taken. Perkins v. Smith, 116 N. Y. 441, 23 N. E. 21; Caponigri v. Altieri, 165 N. Y. 255, 59 N. E. 87; Schlesinger v. Gilhooly, 189 N. Y. 1, 81 N. E. 619, 12 Ann. Cas. 1138; Schlesinger v. Lehmaier, 191 N. Y. 69, 83 N. E. 657, 16 L. R. A. (N. S.) 626, 123 Am. St. Rep. 591. The provisions of the act of 1870, as amended, were substantially embodied in section 74 of the Banking Law (chapter 10, Laws of 1909), which was in force at the time the note in suit was executed.

It was proved upon the trial, and is not questioned by the appellant, that at the 'time of the transaction plaintiff was a private banker. But it is urged that the privileges conferred upon private bankers by section 74 are limited by section 314 of the same law, and that a private banker cannot take interest in excess of the legal rate on loans of less than $200. This section is substantially a re-enactment of section 5 of chapter 326 of the Laws of 1895, as amended by chapter 78 of the Laws of 1902. The section appears in article 10 of the Banking Law, which is entitled "Personal Loan Associations." The first section of the article (310) provides that in any county of the state in which there is an incorporated city (except the counties of Monroe and Westchester) five or more persons may organize and become a corporation for the purpose of aiding such persons as shall be deemed in need of pecuniary assistance, by loans of money at interest, not exceeding $200 to any one person, upon a pledge or mortgage of personal property; that before transacting any business they shall file a bond in a specified amount with the superintendent of banks; that the bonds shall be renewed and refiled annually (section 311); that no such corporation shall, in any year, declare or pay a dividend on its capital stock amounting to more than 10 per cent. (section 313). Then comes section 314, which provides, among other things, that:

"In any such county no person or corporation, other than corporations organized pursuant to this article, shall directly or indirectly charge or receive any interest, discount, or consideration greater than the legal rate of interest upon the loan, use or forbearance of money, goods or things in action less than $200 in amount or value, or upon the loan, use or sale of personal credit in any wise where there is taken for such loan, use or sale of personal credit any security upon any household furniture, apparatus or appliances, sewing machine, plate or silverware in actual use, tools or implements of trade, wear-

ing apparel or jewelry. * * * Any person, and the several officers of any corporation, who shall violate the foregoing prohibition, shall be guilty of a misdemeanor, and upon proof of such fact the debt shall be discharged and the security shall be void. But this section shall not apply to licensed pawn-brokers, making loans upon the actual and permanent deposit of personal property as security; nor shall this section affect in any way the validity or legality of any loan of money or credit exceeding $200 in amount."

It seems to me clear, not only from the language used, but from its position in the Banking Law, that the Legislature did not intend section 314 should be applied to private bankers. It is quite inconceivable both sections would be enacted by the same act, if one were intended to repeal or nullify the other. This view is also strengthened by the fact that, when the new Banking Law (chapter 369, Laws of 1914) was passed, the sections referred to (74 and 314) were substantially re-enacted; the former becoming 114, and the latter 368, of the new law, the prohibition being directed against any person or corporation other than those duly authorized by the superintendent of banks, etc. I cannot believe the Legislature intended that by section 368 state banks and private bankers should be limited as to the rate of interest, when their rights are defined in another section of the same statute, viz., section 114.

It is true, as contended, there is no direct authority bearing upon the question under consideration; but the recent case of People v. Young, 207 N. Y. 522, 101 N. E. 451, is significant as to the view entertained by the Court of Appeals regarding the effect of these two sections. There the appeal was from a judgment convicting the defendant of having taken interest in excess of the legal rate in violation of section 314 of the Banking Law. Judge Bartlett, who delivered the opinion, in which all the other judges of the court concurred, said:

"The appellants contend that they are protected from prosecution for usury under section 314 of the Banking Law by reason of the fact that they are 'private bankers,' and therefore within the immunity afforded to every bank and private and individual banker' by section 74 of the Banking Law itself, which section was originally revised from chapter 409 of the Laws of 1882, and the true intent and meaning of which was declared to be 'to place and continue banks and private and individual bankers on an equality' with national banks under the federal laws. The effect of this legislation, as is well known, was and is to place state banks and private and individual bankers within the state on the same footing as national banks in respect to usurious loans or discounts; so that only double the amount of the interest is recoverable in such cases, but the entire loan is not rendered void by reason of the usury. * * * It seems to me that it is almost preposterous to claim that the State Loan & Realty Association, or these defendants as its agents, can be regarded as bankers in any sense."

The purpose of the statute relating to state banks and private and individual bankers was, as already indicated, to place them upon the same footing as national banks in respect to usurious loans or discounts, and if the construction urged by the appellant were to be adopted this purpose would be destroyed because a national bank could take a usurious rate of interest on loans less than $200, and the only penalty would be that double the amount of interest might be recovered, but the entire loan would not thereby be rendered void; whereas, if a state

bank or private or individual banker did so, he would be guilty of a misdemeanor, and the debt itself satisfied and discharged.

The determination appealed from is therefore affirmed, with costs.

INGRAHAM, P. J., and LAUGHLIN and DOWLING, JJ., concur.

HOTCHKISS, J. (dissenting). I shall state the grounds of my dissent, without attempting to fully argue them. Chapter 326 of the Laws of 1895 belonged to a class of legislation which at or about that period was enacted in a number of states and was generally known as Small Loans Acts. The Massachusetts act was recently before us for construction. These acts grew out of the discovery that the business of making small loans to poor people had grown to large proportions and presented questions of serious public interest, inasmuch as the industry had fallen into the hands of unscrupulous persons, known as "loan sharks," who, working upon the improvidence of a necessitous class, extorted unconscionable rates of interest for loans insignificant in amount, save when compared with the resources of the borrowers. It has been said, and I believe is generally conceded, that Bentham's celebrated "Defense of Usury," and the great objection urged against usury laws by him and his followers, is that to make high rates of interest illegal is simply to drive the unfortunately placed borrower into the arms of a class of men willing to balance the profits of extortion against the odium and risks of an unlawful trade. To avoid this, and to furnish lawful and regulated media for the class of loans in question, was the undoubted purpose of all such legislation, which in effect places this class of loans in a category separate and apart from larger loans, the very amount of which indicates that they are not made to a type of persons it was the intention of the Legislature to protect.

The evil conditions sought to be mitigated by Small Loans Acts notoriously existed to a larger extent in cities than in less populous localities. The original act (Laws 1895, c. 326), the essential form of which, so far as purpose and penalty is concerned, has never been changed, applied to cities (other than those in two excepted counties) having not less than 600,000 inhabitants, and provided for the incorporation of "associations" for lending money on personal property, the purpose of which associations was in the first section declared to be for "*aiding* such persons as shall be deemed in need of pecuniary assistance, by loans of money not exceeding," etc. By the third section, dividends were limited to 10 per cent. per annum, and by the fifth section, in counties where such associations existed, all persons except pawnbrokers, and every other kind of corporation than those provided for by the act, were prohibited from taking a greater rate of interest than 6 per cent. per annum on loans of less than $200 in amount, and the violation of the act was made a misdemeanor. The act of 1895 was subsequently amended to apply to cities of more than 25,000 population (Laws 1902, c. 78), and again to "any incorporated city" (the exception of the two counties being continued), in which form it was carried into the Banking Law in the Consolidated Laws, where it remained at

the time of the loan in question. The legislative intent, as disclosed by the "history of legislation and the evil which the statute was designed to prohibit or remedy," may be followed through all the mutations of an act, and the fact that it later appears in a codification or consolidation of the laws, unless materially changed in form, should not change its interpretation. Cæsar v. Bernard, 156 App. Div. 724, 732, 141 N. Y. Supp. 659, affirmed 209 N. Y. 570, 103 N. E. 1122.

I draw no conclusion adverse to the purpose of the original law because of its subsequent history or present location in the statutes. To me the situation seems plain. Section 74 of the Banking Law, as well as the statutes from which it was taken, was intended to cover the great body of commercial business consisting in loans in excess of $200, and to put the banks and private bankers of this state on a parity with national banks with respect thereto. Section 310 et seq., including section 314, were intended to continue the segregation of small loans from the general act, and to limit to the class of "associations" (now called corporations) therein described and under the limitations, conditions and penalties therein provided for, the privilege or business of making such loans to the improvident class who are therein sought to be protected. This case is abundant proof that the evils which the Small Loans Acts were intended to prevent are to be as much apprehended from private bankers as now regulated by law as from the class against which the orginal act was directed. The effect of section 314 is in no event to wholly repeal section 74, for it applies to only an infinitesimally small part of the transactions affected by section 74. Repeals by implication are not presumed, unless there is irreconcilable inconsistency. If section 74 is read—save as hereinafter provided—the meaning of section 310 et seq. is clear, and their purpose and intent are preserved. In view of the sweeping provisions of section 314—"in any such county no person or corporation other than corporations organized pursuant to this article shall," etc.; "any person and the several officers of any corporation who shall violate," etc.—and the fact that pawnbrokers are alone exempted from the operations of the act, it seems to me that it is error to hold that banks and private bankers are also excepted.

I do not see that People v. Young, 207 N. Y. 522, 101 N. E. 451, is necessarily decisive of this case, although portions of the opinion may lend to the conclusion reached by a majority of my Brethren herein.