GUSSIE FRIEND, Plaintiff, *v.* LOUIS FRIEDMAN and Others, Defendants.

Supreme Court, Sullivan County, February 24, 1926.

Mortgages — foreclosure — defense of usury — mortgage was executed to son of one of mortgagors for $9,800 — mortgage was immediately assigned to plaintiff for $8,000 — plaintiff acting through agent paid $8,000 directly to mortgagors — original mortgagee had no interest in mortgage and neither paid nor received money in transaction — evidence shows that entire transaction was subterfuge to cover up bonus and was usurious — conveyance by defendants after execution of mortgage and reconveyance by deed not containing assumption of payment of mortgage debt entitled defendants to plead usury — pleadings — answer of one of mortgagors considered amended to show reconveyance to him on date answer was served — complaint dismissed.

In an action to foreclose a mortgage executed by the defendants for $9,800 to the son of one of them, the defense of usury is sustained and the complaint dismissed, where it appears that immediately after the execution of the bond and mortgage the aforesaid son assigned said bond and mortgage to plaintiff whose agent ·caused to be paid directly to defendants the sum of $8,000; that said son neither received nor paid out any money and had no interest in the mortgage; and that the evidence shows that the entire transaction was a mere subterfuge to cover up the bonus represented by the difference between the face of the mortgage and the amount paid therefor by the assignee.

The conveyance of the property by the mortgagors to a third person after the execution of the mortgage and the reconveyance to said mortgagors, did not bar their right to interpose the defense of usury for the reason that the deeds

conveying and the deeds reconveying the mortgaged premises failed to contain clauses reciting that the grantees assumed payment of the mortgage debt.

The fact that a reconveyance to one of the mortgagors was not made until the answer herein was served, and was not pleaded, will not bar that defendant from interposing the defense of usury, for the court will consider the answer as having been amended upon the trial so as to allege said reconveyance.

ACTION to foreclose mortgage.

*John D. Lyons,* for the plaintiff.

*Isadore Rothenberg,* for the defendants Louis Friedman and another.

*Max Brownstein,* for the defendant David Sasowsky.

NICHOLS, J.   On April 4, 1922, and for some time prior thereto, the defendants Louis Friedman and David Sasowsky were the owners of a farm situate in the town of Bethel, Sullivan county, containing twenty-eight acres of land and upon which there was a boarding house.   The farm was incumbered with a mortgage of $9,000 and a second mortgage for a smaller sum which was held by a man named DeGroot.   DeGroot's mortgage was payable $500 a year and he was pressing the defendants for payment.   The only income from the property was derived from the farm and the boarding house during the boarding season which commenced about July first and terminated about the first of September.   At this time there was a partnership composed of Samuel Bakst and Henry Hirshaut who were doing business at Monticello as real estate agents, selling land and placing loans, etc.   The defendants Friedman and Sasowsky were also embarrassed by importunate creditors, some of whom had placed their claims into judgments which were liens on the property.   The defendants applied to Bakst and Hirshaut to procure a loan for them for the purpose of paying up the DeGroot mortgage and the other liens of record at least.   They required for this purpose the sum of $8,000 and for which they offered as security a second mortgage on said farm which had a value according to the testimony of Doctor Friend, of at least $50,000.   The defendants were apprised by said Samuel Bakst that he had made efforts to place a second mortgage on the premises and that his efforts were unavailing; that the only way the matter could be financed would be by executing a mortgage to some friend of the defendants and then selling it at a discount so as to procure the required $8,000.   This the defendants agreed to and Samuel Bakst approached a real estate agent in the city of New York whose name was Nathan Bakst, not related, however, to Samuel Bakst; Nathan Bakst was a brother of the plaintiff in this action.   Samuel Bakst informed the defendants that it required

Supreme Court, February, 1926. [Vol. 126 .

a bonus of twenty-five per cent, or $2,000, to effect such a transaction. The defendants demurred to paying twenty-five per cent bonus, but offered to pay twenty per cent. They were subsequently taken by said Nathan Bakst to the house of his sister, this plaintiff. There were present at that interview the defendants Friedman and Sasowsky, Nathan Bakst, the plaintiff and her daughter, a young woman about twenty-one years of age. Some conversation was had and then the son of the plaintiff who was a dentist and is called Doctor Friend, came in and participated in the discussion. The defendants claim that the plaintiff asked a bonus of twenty-five per cent; that they demurred and offered twenty per cent, which was finally acceded to by the plaintiff on the advice of her brother, Nathan Bakst; and when Doctor Friend came in the same discussion was had again and it was arranged that the doctor should go to Sullivan county and inspect the premises and see if they were of sufficient value to warrant the investment. The plaintiff denied this meeting *in toto* as does her son, Doctor Friend. The plaintiff does not speak English. However, as all the participants were Hebrews and understood Yiddish, the conversation was carried on in Yiddish. The young woman, plaintiff's daughter, was not present at the trial or produced as a witness and her absence was not explained. Nathan Bakst was, not produced on the trial which was held Monday, May fourth; it was, however, stated on the trial that on the preceding Saturday, May second, Nathan Bakst was taken to a hospital in the city of New York and could not be seen by any one. No application for a continuance was made and no application was made to have the trial kept open so as to procure the testimony of plaintiff's daughter and Nathan Bakst.

Doctor Friend testified that sometime in March he was approached by some of the real estate agents who told him there was a mortgage of $9,800 which was for sale for $8,000 and that the property was good; that he communicated the fact to his mother that a $9,800 mortgage was for sale in Sullivan county which she could buy for $9,800 and advised its purchase, and that he never revealed to her that it was for sale at a discount. The plaintiff testified to the same thing, and further that she only had $7,700 in cash, to which he replied that he owed her $300 which he would pay and that he would advance the residue of $1,800 and that she could repay that later; and that she assented to this arrangement. Doctor Friend could read and write and speak English fluently.

Before the execution of the bond and mortgage, the defendants Louis Friedman and David Sasowsky told Doctor Friend that

they could not pay $2,000 on the fifth day of September and that they could only pay $1,000 the first year and then the doctor demanded an additional bonus for this extension, and after some parley they agreed to pay $200 which made the entire amount of bonus $1,800.

On April 4, 1922, the defendants Louis Friedman and David Sasowsky in company with the agent Samuel Bakst went to the office of one Sherman, a lawyer in New York city, who prepared a bond and mortgage on said premises in the sum of $9,800 payable to one David Friedman who was a son of the defendant Louis Friedman. David was a young man, unmarried and who worked in New York. On April fifth David Friedman went to the office of Sherman and executed an assignment of said bond and mortgage and of a chattel mortgage which had been given as collateral security for the payment of the real estate mortgage, to this plaintiff. The lawyer showed him where to sign said papers and he signed and acknowledged them; he advanced nothing to the defendants and received nothing from the plaintiff or her agent, Doctor Friend. Both the plaintiff and Doctor Friend testified that the doctor was her agent in closing these transactions. Dr. Friend was not present at the time David Friedman executed the assignments, David leaving the assignments with the lawyer, Sherman. After David left the office, Doctor Friend came in with three or four bank drafts payable to his mother and possibly some cash amounting to $7,700 and his own check for $300. He sat down and read the bond and mortgage and the assignments. The mortgage had not been recorded. He demanded to know why David Friedman was not there and said he would not pay the money to any one except David Friedman. Sherman said that he represented the parties and thereupon $7,900 was paid to Sherman which was by him delivered to the defendants and an additional $100 was paid over to Sherman which was delivered to Nathan Bakst for his commission, pursuant to the direction of Doctor Friend. The doctor declares that he only paid this $8,000 but claims that subsequently he paid a commission of $250 to Hirshaut and Bakst and $400 to his uncle, Nathan Bakst. He claims that he concealed all these transactions from his mother and that she subsequently paid him $1,800.

August 30, 1922, the defendant David Sasowsky and wife executed a deed of his interest in said property to one Jacob Siegel, which deed was offered in evidence by the plaintiff; in this deed Siegel did not assume payment of the bond and mortgage; said deed contained the following clause: "subject however to all mortgages,

liens, taxes, assessments and other incumbrances that the record may show."

On October 9, 1924, Jacob Siegel and his wife reconveyed said premises to David Sasowsky; in this deed there was no assumption by Sasowsky of payment of the mortgage debt. This deed was also offered in evidence by the plaintiff. Sasowsky and Siegel both testified that this deed, while absolute in form, was in fact a mortgage given to secure the payment of an indebtedness of $800. As I view it, however, it is a matter of no importance in this litigation whether it was a deed or a mortgage; because Sasowsky by reason of the reconveyance became vested with the entire estate, subject to no covenant and bound by no contract; and the result would be the same if this deed were stricken out by the court if it was intended as a mortgage because the mortgage tax had not been paid thereon; the subsequent reconveyance would reinvest Sasowsky with the title if both deeds were stricken out; Sasowsky would stand the same as he did when he executed the bond and mortgage.

On March 15, 1924, Louis Friedman conveyed his interest in said farm to his wife, Emma Friedman; in such conveyance the grantee did not assume payment of the mortgage debt, said conveyance containing the following clause: " subject to all mortgages, taxes and other liens or incumbrances now on record against said premises." This deed was also offered in evidence by the plaintiff. December 6, 1924, Emma Friedman reconveyed said premises to the defendant Louis Friedman; Louis Friedman did not assume payment of the mortgage debt, said conveyance containing the following clause: " That the said premises are free from incumbrances except a first mortgage in the sum of $9,000 held by one Gregory." This deed has not been recorded and was offered in evidence by the defendant Louis Friedman.

The summons in this action was served November 20, 1924; the answer of Louis Friedman was verified December 6, 1924, the same day the reconveyance from Emma Friedman back to said Louis Friedman was acknowledged. The answer of the defendant Louis Friedman does not allege the reconveyance of said property back to him. On the trial the plaintiff's attorney did not state to the court and the court was not informed that said reconveyance was not pleaded, the objection of plaintiff's counsel to the introduction of said deed in evidence being as follows: " Mr. Lyons: I object to it upon the ground that the deed according to its date as read by the counsel in making the offer is subsequent to the commencement of this action and is incompetent and immaterial." There was no claim made that it was not pleaded; and had such

a claim been made I would have permitted the service of a supplemental answer setting up the fact of such reconveyance of said premises to the defendant Louis Friedman; and I now permit the service of a supplemental answer setting up the fact of such reconveyance, same to be regarded as having been done upon the trial; and as a condition for such supplemental answer, I decline to allow costs to the defendant Louis Friedman, although successful in this action.

In *Knickerbocker Life Ins. Co.* v. *Nelson* (78 N. Y. 137, 142), which was an action where usury was pleaded and where the defendant who executed the mortgage alleged as usurious had conveyed the property and in which conveyance the plaintiff had not assumed the mortgage debt, in the opinion of Judge DANFORTH the court says: " Upon the trial at special term, the court by order dated May 30, 1877, allowed the defendant, George W. Nelson, to amend his answer, by setting up a reconveyance of the premises to him as issue was joined as hereinafter stated." And at page 149 the court, in speaking of said amendment, says: " By it he was allowed to set up a conveyance to himself from the defendant Watkins of the premises described in the complaint * * * and though called an amendment may be regarded as a supplemental answer. * * * It was one however in the power of the trial court to make and it does not appear that the power was improperly exercised." In the same case the court holds that the mortgagor and borrower on such a reconveyance can interpose the defense of usury, saying (at p. 153): " The effect of the conveyance by Watkins to Nelson was to vest in him so much interest in the land as the former had acquired. Nelson then had a perfect title to the property, and a right to interpose the defense of usury in like manner as if he had never parted with the equity of redemption."

Therefore, each of the mortgagors, David Sasowsky and Louis Friedman, upon a reconveyance of said premises, neither grantee having assumed the payment of the mortgage debt, had a right to interpose the defense of usury.

While Doctor Friend, the agent of the plaintiff, testified that he had been told in March previous to April fifth there was a second mortgage that could be bought at a discount, yet, when he read these papers which showed that the bond and mortgage was executed April fourth and that the mortgage had not been recorded, although he testified that he did not observe the date, it was perfectly apparent that the bond and mortgage had not been executed and in existence when the negotiations for its sale had taken place, and was made expressly for the purpose of selling

the same at a usurious discount; and it makes no difference whether his mother knew of that fact or not as to the legal effect thereof. In *Miller* v. *Zeimer* (111 N. Y. 441, 444) the court says: "The transaction, although in form a mortgage, was, nevertheless, in contemplation of law a loan of money to the extent of the consideration advanced, the mortgage not having had any inception until its transfer to the plaintiff's testator. The mortgage was void for usury by force of the statute, notwithstanding the purchaser was innocent and had no intent to enter into a usurious transaction, but purchased the mortgage, supposing that it was a *bona fide* and valid security." In the case of *Sabine* v. *Paine* (166 App. Div. 9, 12) the court says: "If we consider, for the sake of the argument, that all knowledge which her husband had, plaintiff is chargeable with and for all of his acts she is responsible, still there is nothing to contradict the evidence that he took the note without knowledge or actual notice of the defect therein, and relying upon the presumption that the note was given for a good consideration. * * * the judgment and order should be affirmed on the ground that, although the plaintiff was a holder in due course for value, the note had no valid inception until its purchase and discount by plaintiff's agent; that this discount was at a usurious rate for the sum loaned * * * ."

It seems to me that the conduct of the plaintiff upon the trial, in not attempting to have her daughter whom she testified was a business woman, attend at the trial and testify; and also in not attempting to obtain the testimony of her brother Nathan Bakst, both of whom the defendants testified were present when the usurious agreement was made with the plaintiff personally; her knowledge of the usury law as conceded by her on the trial; the manner in which she testified that the $1,800 was repaid to her son where he had been so careful to give the $300 that he conceded he owed his mother; her knowledge of the fact that second mortgages were not as valuable as first mortgages; the unreasonableness of the statement of the plaintiff's son that he had robbed his mother of $1,150 which he concedes he did, all convinces me that she had personal knowledge herself of the infirmity in this bond and mortgage. The defendants have established the defense of usury. Owing to the defect in the answer of the defendant Louis Friedman, I allow no costs to him. I allow the defendant David Sasowsky a bill of costs.